A94A1468. HUGHES v. THE STATE.
(449 SE2d 547)

McMURRAY, Presiding Judge.

Defendant Vance Hughes, Jr., was jointly indicted with his son, Eric Dwayne Hughes, and charged with violation of the Georgia Controlled Substances Act ("Trafficking Cocaine") in that they "did knowingly bring into the State of Georgia and possess more than 400 grams of cocaine. . . ." Defendant was also charged with speeding. Eric Dwayne Hughes pled guilty "to Possession of Cocaine with the Intent to Distribute" while defendant was tried before a jury. Viewed to uphold the jury's verdict, the evidence showed Trooper Bryant McCard of the Georgia State Patrol stopped a car driven by defendant for doing 78 mph in a 65-mph zone on Interstate 75. "Eric Hughes was the passenger in the car with [defendant][.]" Defendant told the officer "he was going to Cordele to his family." Defendant had a valid Florida driver's license. Trooper McCard noticed the tag on this vehicle "as being a Y tag from Florida. And tags that are issued in Florida with the letter Y beginning are rental vehicles." Trooper McCard "asked [defendant] for his rental agreement to the vehicle and he said it was in the car, that he would have to get it out of the car." Defendant then led Trooper McCard to the passenger side of the vehicle, where the officer spoke with Eric Dwayne Hughes. "There was no rental agreement in the car." According to a videotape of this traffic stop, Eric Dwayne Hughes explained that a friend of his, who had a credit card, had arranged to rent the vehicle over the telephone and that he was the second driver. Eric Dwayne Hughes further advised Trooper McCard "that he was going to drop his dad off in Cordele . . . [and] that he was going to continue on to Atlanta." Trooper McCard did not observe any bulge in Eric Dwayne Hughes' clothing during this conversation even though he was leaning over him at the passen-

ger window and so he inferred that Eric Dwayne Hughes "didn't have [any] bag stuffed down inside his jacket. . . ." Subsequently, Eric Dwayne Hughes exited the car from the passenger side and walked away from the rental vehicle and away from his father and Trooper McCard. Trooper McCard repeatedly told Eric Dwayne Hughes to "come back" and also requested defendant "to ask his son to stop and tell him to come back. . . ." However, defendant "didn't react at all. . . ." Then, "Eric Hughes dropped a white sack . . . out from under his coat . . . ," whereupon he was forcibly arrested by Trooper McCard. Inside this white plastic shopping bag were two rectangular packages, wrapped in paper and sealed with silver duct tape.

Special Agent Aaron Graves of the Georgia Bureau of Investigation arrived at the Turner County jail and interviewed defendant. Defendant gave Special Agent Graves a statement in which he claimed to have no knowledge of the two bricks of suspected cocaine his son dropped from beneath his jacket by the side of the road. However, defendant had a "wallet full of different phone numbers, a lot of digits . . ." some of which had dollar signs or cents signs in front of them and some "gun receipts." Special Agent Graves performed a field test of the two taped bricks and each was positive for cocaine. According to Susan A. Strickland, assistant director of the Moultrie branch of the State Crime Laboratory of Georgia, the powder weight of the two packages was "1000.69 grams" and "972.0 grams," respectively. Special Agent Graves estimated the street value of two kilograms of cocaine at anywhere "from forty-six thousand to fifty thousand dollars." An inventory search of the vehicle yielded "two sets of clothing for one change of clothing, a radar detector . . ." as well as a pager "[i]n the glove compartment of the car." Although no copy of the rental agreement was discovered, Special Agent Graves affirmed that the car had been rented from "Larry's Auto Rental. . . ." Summoned to the scene as backup assistance, Deputy Roger Dale Hobby of the Turner County Sheriff's Department recalled that defendant "acted a little nervous, but not much."

The jury found defendant guilty of both "Trafficking Cocaine" and speeding. His motion for new trial was denied and this appeal, apparently only as to his conviction and sentence for "Trafficking Cocaine," followed. *Held*:

1. OCGA § 16-13-31 (a) (1) provides: "Any person who knowingly . . . brings into this state or who is knowingly in possession of 28 grams or more of cocaine . . . commits the felony offense of trafficking in cocaine. . . ." In his first, second, and fifth enumerations, defendant challenges the sufficiency of the evidence to convict, arguing that the State failed to prove "the essential element of knowledge under OCGA § 16-13-31 (a) (1). . . ." We agree with defendant that the evidence adduced below was insufficient to authorize a rational trier of

fact to find, beyond a reasonable doubt, the elements of trafficking in cocaine as alleged in the indictment. Consequently, we reverse defendant's conviction for that offense.

In reply to defendant's motion for directed verdict of acquittal, the State's attorney conceded that "the evidence against Mr. Hughes is circumstantial; and we never put — never were able to put the drugs in his hands." However, the State relied on the circumstance that defendant was the driver as proof that "all that is in that automobile is presumed to be in his possession[,]" referring the trial court to *Autry v. State*, 150 Ga. App. 584, 586 (2) (258 SE2d 268). Additionally, the State relied on the following circumstances: Defendant "never [offered] proof to see that any type of documentation that any third party rented the car[; . . . there were no] clothes except a change of underwear and a T-shirt in a paper bag; [and] no luggage in the back of the car." As further proof of defendant's knowledge and complicity in Eric Dwayne Hughes' actual possession, the State's attorney argued that it is "not believable that [defendant] could drive all the way from Miami with a person in the front seat with four pounds of cocaine — this amount, Your Honor, was tucked up under [Eric Dwayne Hughes'] jacket — and not become suspicious and be aware of what it was." Additionally, the State argued that the circumstance that defendant did not respond when Trooper McCard asked him to tell his son to come back is "the evidence that we need to connect him in and connect him up to the cocaine."

"The general rule regarding [joint or] constructive possession was stated in *Watson v. State*, 93 Ga. App. 368 (1) (91 SE2d 832): 'Where immediate and exclusive possession of an automobile, locker room, or other premises is shown, the inference is authorized that the owner of such property is the owner of what is contained therein, and this inference has been referred to as a rebuttable presumption. (Cits.)' However, '(a)s to automobiles, the rule does not apply where there is evidence in the case that the defendant has not been in possession of the vehicle for a period of time prior to the discovery of the contraband or that others have had access to it. *Shepherd v. State*, 77 Ga. App. 857 (50 SE2d 111).' *Elrod v. State*, 128 Ga. App. 250, 251 (196 SE2d 360). Furthermore, ' "(m)erely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime." *Gee v. State*, 121 Ga. App. 41, 43 (172 SE2d 480). While *Gee* applies to premises, the same rule appertains to automobiles. (Cit.)' *Donaldson v. State*, 134 Ga. App. 755, 756 (216 SE2d 645)." *Davis v. State*, 146 Ga. App. 629 (2) (247 SE2d 210).

In the case sub judice, it is undisputed that only Eric Dwayne Hughes had actual possession of the cocaine and it is further undis-

puted that he had equal access to the rented automobile defendant was driving. "The evidence [in the case sub judice] does not show actual possession by [defendant], and to support a finding that he was in [joint or] constructive possession of the contraband the circumstantial evidence must be both consistent with the hypothesis of guilt and must exclude every other reasonable hypothesis. *Mitchell v. State*, 150 Ga. App. 44, 46 (2) (256 SE2d 652) (1979). 'A finding of [joint or] constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity.' [Cit.]" *Shirley v. State*, 166 Ga. App. 456 (1) (304 SE2d 468). "Where it is established that other persons had equal access to the vehicle, 'the application of a presumption of possession of any contraband found in it is not a sound, abstract principle of law and is a dangerous rule for the numerous owners [or drivers] of motor vehicles.' . . . [Cit.]" *Whipple v. State*, 207 Ga. App. 131 (1), 132 (427 SE2d 101).

"[H]aving eliminated the presumption of possession, what remains [in the case sub judice is defendant's] mere presence near hidden cocaine." *Whipple v. State*, 207 Ga. App. 131, 132, supra. "[M]ere proof of the accused's presence at the scene of the crime, without any evidence to show further participation in the commission of the crime, is insufficient to authorize a conviction. [Cits.]" *Muhammad v. State*, 243 Ga. 404, 405 (1) (254 SE2d 356). Even approval (not amounting to encouragement) will not make the accused an active participant or an aider and abettor. *Parker v. State*, 155 Ga. App. 617 (2), 618 (271 SE2d 871). " ' "Neither presence nor flight, nor both together, without more, is conclusive of guilt." ' (Quoting *Griffin v. State*, 2 Ga. App. 534 (2) (58 SE 781) (1907))." *Myers v. State*, 193 Ga. App. 372, 373 (387 SE2d 640). Consequently, in the case sub judice, it is not sufficient that defendant "acted a little nervous" at the scene. The additional circumstances relied upon by the State, i.e., that a pager was found in the glove compartment and that in defendant's wallet was a list "full of different phone numbers, a lot of digits — a lot of different digits [ . . . with] dollar signs . . ." by themselves are not evidence of guilty knowledge. The State adduced no evidence to connect the pager, the phone numbers, or the digits with dollar signs to telltale signs of criminality. "As a matter of law, [defendant's] presence [as the driver] is not enough [circumstantial evidence] to support a finding of criminal possession of the contraband beyond a reasonable doubt, to the exclusion of every other reasonable hypothesis [save the guilt of the accused as required by OCGA § 24-4-6]." *Whipple v. State*, 207 Ga. App. 131, 132, supra. See also *Denham v. State*, 144 Ga. App. 373, 374 (1, 2) (241 SE2d 295); *Greeson v. State*, 138 Ga. App. 572, 574 (4) (226 SE2d 769), rev'd on other grounds, *State v. Greeson*, 237 Ga. 193 (2) (227 SE2d 324). Compare *Fears v.*

*State*, 169 Ga. App. 172 (1), 174 (312 SE2d 174). "Here, as in *Whipple*, supra, '(w)e recognize that the factfinder is usually in the best position to determine questions of reasonableness when evidence of guilt is circumstantial. (Cits.)' [Cit.] Nevertheless, since [any] presumption of possession [was rebutted by the undisputed evidence that defendant's passenger had an equal opportunity to commit the crime without defendant's knowledge], we find no evidentiary basis upon which the jury could have concluded beyond a reasonable doubt that [defendant] was in knowing [joint or constructive] possession of the cocaine [that the co-indictee dropped from his person after exiting the car]." *Reid v. State*, 212 Ga. App. 787, 789 (442 SE2d 852). Consequently, the trial court erred in denying defendant's motion for directed verdict of acquittal as to Count 1, violation of the Georgia Controlled Substances Act ("Trafficking Cocaine").

2. The remaining enumerations have been considered and are found to be rendered moot by our reversal of the conviction for violation of the Georgia Controlled Substances Act ("Trafficking Cocaine").

*Judgment reversed. Pope, C. J., and Smith, J., concur.*

DECIDED OCTOBER 20, 1994.

*Glenn Zell, Rodney S. Zell,* for appellant.
*C. Paul Bowden, District Attorney, M. Elizabeth McFadyen, Assistant District Attorney,* for appellee.