A07A1666. CONEY v. THE STATE.
(659 SE2d 768)

PHIPPS, Judge.

Patrick Coney appeals his convictions of aggravated assault and cocaine possession, contending that the trial court erred by admitting certain evidence, by failing to adequately charge the jury on aggravated assault, and by rejecting his claim of ineffective assistance of counsel. For reasons that follow, we reverse. Because the evidence was sufficient, Coney may be retried.

The state's evidence showed that on the night of March 7, 2003, a uniformed police officer stopped Coney for driving a car with no taillight. A male was sitting in the front passenger seat, and a woman was sitting in the back seat. Coney could produce no driver's license and instead gave the officer his name and birthdate. As the officer was checking whether a valid driver's license existed under that name and birthdate, Coney sped away.

The officer pursued Coney, who exited his car during the chase and was struck to the ground by the officer's patrol car. Coney's passengers complied with the officer's command to exit the car and stand by it. When the officer approached Coney to check on him and to arrest him, Coney "jumped up," struck the officer several times, and tried to flee. The officer caught Coney, and during their ensuing fight, Coney began reaching for the officer's gun. Coney's male passenger and a police officer who had arrived as backup heard the officer in the fight shout that Coney was going for his (the officer's) gun. The officer struggled to maintain control of his gun, instructing Coney to release the weapon. Coney did not. The officers testified that Coney threatened to kill them and himself; Coney's male passenger did not hear Coney say anything. During their struggle, a gunshot rang out; the officer's hand was shot. The officer testified, "I disengaged from the subject and advised [the backup officer] that I'd been hit." The officer's gun fell to the ground, and Coney grabbed it. The backup officer saw Coney pointing the gun at the other officer and then shot Coney in the back.

Coney was transported to a hospital. During a search of his car that night, a "white plastic tube similar to . . . a Chapstick tube" was found under the driver's seat; the tube contained a substance that appeared to be crack cocaine. Later that same night, while Coney was unconscious, a police officer directed hospital personnel to obtain a

sample of Coney's urine and blood. His urine sample tested positive for cocaine, a cocaine metabolite, and marijuana; his blood sample tested positive for cocaine and marijuana metabolites; and the substance contained in the tube found under the driver's seat was confirmed to contain cocaine.

Coney testified: He drove away from the traffic stop because he was afraid to be in a dark, isolated location with a police officer who he believed had brutalized his uncle. When he stopped "around the corner" at a nearby, lighted place with other people, the officer's patrol car rammed into his door, causing it to open. He stepped out of the car; the patrol car struck him; and Coney felt a sharp pain on the side of his body and therefore lay on the ground. Attempting to handcuff Coney, the officer pressed Coney to the ground such that Coney began having difficulty breathing and became dizzy. Because his complaints to the officer led to no relief, Coney tried to get up. Coney's next memory was awakening in the hospital 16 days later. In addition to gunshot wounds, he had sustained broken ribs and punctured lungs.

Coney denied having any drugs in the car. He testified that the car belonged to his father; that his father and four siblings drove the car at times, although he had been using it during the preceding week; that he had not known his passengers well on the day of the incident; that he did not know whether either of them had drugs; and that the back seat passenger was sitting behind the driver's seat, screaming because she, too, was afraid.

Coney was indicted and found guilty of (i) aggravated assault, by "unlawfully [making] an assault upon the person of [a police officer] with a pistol, a deadly weapon, said person being . . . engaged in his official duties, by shooting said officer"; and (ii) cocaine possession.[1]

1. Coney contends that the trial court failed to adequately instruct the jury on the offense of aggravated assault. He argues that the final charge was incomplete as to aggravated assault because it did not define an essential element: "assault." In addition, Coney asserts that the absence of this definition from the final charge allowed the jury to impermissibly substitute criminal negligence for the requisite intent.

OCGA § 16-5-21 defines that aggravated assault is committed when a person "assaults: (1) With intent to murder, to rape, or to rob; (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." "Assault" is defined in OCGA

---

[1] The indictment also charged Coney with possession of a firearm during the commission of a crime, but the trial court granted his motion for a directed verdict as to that count.

§ 16-5-20 (a): "A person commits the offense of simple assault when he or she either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury."

In this case, the court instructed the jury that "a person commits the offense of aggravated assault when that person assaults another person with a deadly weapon,"[2] tracking the first sentence of the applicable pattern jury instruction defining aggravated assault.[3] The court did not charge, however, the remaining portion of the pattern jury instruction, which would have provided the jury with the statutory definition of "assault."[4] Coney argues that the trial court thus failed to charge the jury on essential elements of the offense of aggravated assault.

In 1980, the Supreme Court of Georgia found in *Sutton v. State*[5] "no merit in appellant's contention that a charge on simple assault must be given in order to complete the definition of aggravated assault. The latter does not need the former to make it complete."[6] In so holding, the Court relied upon *State v. Siebert*,[7] although *Siebert* pertained to the sufficiency of language used within an indictment, not to language used within a final charge to the jury.[8] And as recently as 1997, the Court relied upon *Sutton* to summarily reject an appellant's "contention that he [was] entitled to reversal of his conviction because of the trial court's failure to define simple assault as a part of its instruction on aggravated assault."[9]

Meanwhile, in 1996, the Court held in *Smith v. Hardrick*:[10]

Under the Code, aggravated assault has two essential elements: (1) an attempt to commit a violent injury, or an act that places another in reasonable apprehension thereof, *and* (2) that the assault was aggravated by either (a) an intention to murder, rape or rob, or (b) the use of a deadly weapon.[11]

---

[2] The court followed this instruction immediately with "[a] firearm, when used as such, is a deadly weapon as a matter of law."

[3] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 2.20.21.

[4] Id.

[5] 245 Ga. 192 (264 SE2d 184) (1980).

[6] Id. at 193 (2).

[7] 133 Ga. App. 775, 776 (2) (213 SE2d 7) (1975).

[8] Id. Notably, it remains "[un]necessary that an indictment charging a defendant with aggravated assault specify the manner in which the simple assault was committed, but it must set forth the aggravating aspect." *Chase v. State*, 277 Ga. 636, 638 (1) (592 SE2d 656) (2004).

[9] *White v. State*, 267 Ga. 523, 524 (5) (481 SE2d 804) (1997).

[10] 266 Ga. 54 (464 SE2d 198) (1995).

[11] Id. at 55 (2); see also *Maynor v. State*, 257 Ga. App. 151, 153 (570 SE2d 428) (2002) ("offense of aggravated assault under OCGA § 16-5-21 has two essential elements: (1) that a

And in 2002, the Court recognized in *Brinson v. State*[12] that "central to the offense of aggravated assault is that an assault as defined in OCGA § 16-5-20" occurred.[13]

We find the instant case controlled by the Supreme Court's more recent case, *Chase*,[14] which follows principles underlying *Smith*[15] and *Brinson*.[16] Among other offenses, the appellant in *Chase* had been indicted for aggravated assault by "assault(ing the victim) with a gun, a deadly weapon, by shooting her."[17] At issue was whether the trial court had sufficiently charged the jury on the offense of aggravated assault. The court had instructed:

> [A] person commits aggravated assault by the use of a deadly weapon if the person assaults the victim by shooting the victim with a firearm. . . . (I)n order for there to be a conviction for aggravated assault, you must find either an intention to commit injury on the other person or that the other person was intentionally placed in reasonable apprehension of immediately receiving a violent injury.[18]

The appellant in *Chase* contended that the charge was reversible error because it failed to inform the jury of a requirement set forth within the simple assault statute, OCGA § 16-5-20 (a) (1), that there must have been an intent to commit a *violent* injury to the person of another.[19]

Agreeing with the appellant, the Court espoused:

> Jury instructions are the lamp to guide the jury's feet in journeying through the testimony in search of a legal verdict. The office of a charge by the court is to give to the jury such instruction touching the rule of law pertinent to the issues involved in a pending trial as will enable them intelligently to apply thereto the evidence submitted, and from the two constituents law and fact make a verdict. The trial judge must charge the jury on each crime specified in the indictment unless the evidence does not warrant a

---

simple assault under OCGA § 16-5-20 was committed on the victim and (2) that it was aggravated by (a) an intention to murder, rape, or rob, or (b) use of a deadly weapon").

[12] 272 Ga. 345 (529 SE2d 129) (2000).

[13] Id. at 347 (1).

[14] Supra.

[15] Supra.

[16] Supra.

[17] *Chase*, supra at 638 (1).

[18] Id. at 639 (2).

[19] Id.

conviction of such crime, or unless the State has affirmatively withdrawn a crime or stricken it from the indictment. The jury must be given an appropriate instruction as to the law on each substantive point or issue involved in the case. When a given instruction fails to provide the jury with the proper guidelines for determining guilt or innocence, it is clearly harmful and erroneous as a matter of law. Consequently, the failure to inform the jury of an essential element of the crime charged is reversible error because the jury is left without appropriate guidelines for reaching its verdict.[20]

*Chase* is further instructive to the instant case because, in finding reversible error, the Court rejected the state's argument that any error in the charge on simple assault was harmless on the ground that a charge on simple assault is superfluous when the crime is aggravated assault.[21]

Moreover, Coney points out that in generally instructing the jury on the definition of a crime, the trial court stated, "A crime is a violation of a statute of this state in which there is a joint operation of an act, or omission to act, and intention, or criminal negligence."[22] The court then defined criminal negligence as "a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby."[23] Coney asserts that, given the absence of the statutory definition of "assault," the final charge improperly allowed the jury to find him guilty of aggravated assault based merely on criminal negligence. We agree.[24]

---

[20] Id. at 639-640 (citations and punctuation omitted).

[21] Id. at 640. Noting *Brinson* and *White*, however, the Court stated that it was "[p]retermitting whether it [was] necessary to charge on the elements of simple assault when the crime is aggravated assault." Id.

[22] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 1.40.10.

[23] Although Coney requested the jury charge on criminal negligence, it is apparent that he did so in connection with his request that the jury be charged on the lesser included offense of reckless conduct.

[24] See *Dunagan v. State*, 269 Ga. 590, 591-594 (2) (502 SE2d 726) (1998) (explaining that aggravated assault with a deadly weapon based on OCGA § 16-5-20 (a) (1) cannot be committed by criminal negligence, but requires an intent to injure and that threatened or actual injury to a victim by a deadly weapon resulting from a defendant's criminal negligence constitutes the offense of reckless conduct; further explaining that the intent of the accused that must be shown for aggravated assault with a deadly weapon based upon OCGA § 16-5-20 (a) (2) is "only the criminal intent to commit the acts which caused the victim to be reasonably apprehensive of receiving a violent injury" and thus, because it is the victim's state of mind that determines whether an (a) (2) assault has been committed, "there is no reason for a charge on criminal negligence at all"); see also *Flores v. State*, 277 Ga. 780, 784 (3) (596 SE2d 114) (2004); *Cadle v. State*, 271 Ga. App. 595, 597 (2) (610 SE2d 574) (2005); compare *Holmes v. State*, 272 Ga. 517, 519 (7) (529 SE2d 879) (2000) (finding no error where trial court properly charged jury on definition of criminal negligence as part of its general charge on the definition of a crime *and* further specifically instructed jury on "the required elements of the offense of aggravated

In light of *Chase*, *Smith*, and *Brinson*, under the circumstances of this case, without the statutory definition of "assault," the final charge was fatally insufficient because it did not instruct on substantive points or issues involved in the case.

The state points out that when the trial court inquired whether there were any objections to its final charge, Coney's counsel replied that he had none and did not reserve the right to object later. Generally, such would constitute waiver, but not where there was a substantial error in the charge that was harmful as a matter of law.[25] Fundamental to any criminal case tried to a jury is the jury's understanding of the essential elements of the crimes charged in order to determine whether the state has met its burden of proof beyond a reasonable doubt.[26] The final charge in this case, viewed as a whole,[27] failed to adequately instruct the jury on the essential element of "assault as defined in OCGA § 16-5-20."[28] Consequently, the jury was without appropriate guidelines for reaching a verdict on aggravated assault.[29] Therefore, we must reverse Coney's conviction for aggravated assault.[30]

2. Coney challenges his conviction for cocaine possession, arguing that the trial court erred by admitting the results of his urine and blood tests. Coney's trial counsel objected that the results were irrelevant and impermissibly impugned his character. The state

---

assault, including the instruction that in order to convict it must find either 'an intention to commit injury on another person' or 'that the other person was intentionally placed in reasonable apprehension of immediately receiving a violent injury' ").

[25] OCGA § 5-5-24 (c).

[26] *Jones v. State*, 272 Ga. 900, 902 (2) (537 SE2d 80) (2000) ("[I]t is axiomatic that the evidentiary burden in a criminal prosecution is upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt.") (punctuation and footnote omitted).

[27] Compare cases decided after *Chase*, supra, e.g., *Brown v. State*, 275 Ga. App. 99, 102 (3) (a) (619 SE2d 789) (2005) (charge on simple assault was not necessary to make a charge on aggravated assault complete, where "the instructions given to the jury by the trial court were sufficient to explain the elements of aggravated assault").

[28] *Chase*, supra at 637 (1).

[29] See id. at 638-640 (2); see further *King v. Waters*, 278 Ga. 122, 123-124 (2) (598 SE2d 476) (2004) (finding reversible error pertaining to firearm possession conviction because where instruction on aggravated assault was fatally flawed, it followed that the instruction of possession of a firearm during the commission of that aggravated assault was likewise flawed); *Cadle*, supra.

[30] See *Chase*, supra at 638-640; *Spear v. State*, 230 Ga. 74, 75 (1) (195 SE2d 397) (1973); *Howard v. State*, 230 Ga. App. 437, 438 (2) (496 SE2d 532) (1998), overruled on other grounds, *Curtis v. State*, 275 Ga. 576, 578 (571 SE2d 376) (2002); *Moore v. State*, 235 Ga. App. 175, 176-177 (509 SE2d 108) (1998) (determining reviewable, under OCGA § 5-5-24 (c), the issue of the trial court's failure to instruct the jury on the elements of rape, the underlying offense of two charged offenses, burglary and aggravated assault); see further *Jones v. State*, 252 Ga. App. 332, 334 (2) (556 SE2d 238) (2001).

countered that it was seeking to present the evidence as circumstantial proof that the cocaine found under the driver's seat belonged to Coney. We do not find that the trial court abused its discretion in overruling the objection asserted.[31]

3. Coney contends that the trial court erred in rejecting his claim of ineffective assistance of counsel.

> To prevail on such claim, a defendant must establish, pursuant to *Strickland v. Washington*, that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. . . . In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[32]

(a) Coney argues that his trial counsel erred by not objecting to two statements made by the prosecutor during closing argument: (i) "Now what I believe is the overwhelming evidence in this case supports the contention that it was the defendant [who shot the officer's hand]"; and (ii) "All I can say is that I wish the Lord had said something to Patrick Coney before this incident got started in the first place so none of us would have to be here today." Coney argues that it was improper for the prosecutor to state his personal beliefs during closing argument and to make an inflammatory appeal to the religious beliefs of the jurors. We do not find professional error in not objecting to the cited statements.[33]

(b) Coney argues that his trial counsel erred by failing to make a proffer when the court sustained the state's relevancy objection to a question posed to the police officer who had initiated the traffic stop concerning why he was no longer employed with the police force. At the new trial hearing, Coney testified that he had been told that the officer had been fired based upon citizen complaints of using excessive force. Coney's trial attorney testified that, after Coney related such a report to him, he subpoenaed the officer's internal affairs records to "try to develop on those rumors." But there was nothing in the records substantiating Coney's report. The attorney did not

---

[31] See *Castillo v. State*, 281 Ga. 579, 584 (7) (a) (642 SE2d 8) (2007) (whether the prejudice of relevant evidence outweighs its probative value is a matter addressing itself to the trial court's discretion).

[32] *Espinosa v. State*, 285 Ga. App. 69, 72 (2) (645 SE2d 529) (2007) (footnotes omitted).

[33] See generally *Jackson v. State*, 278 Ga. 235, 238 (5) (a) (599 SE2d 129) (2004) (prosecutor's remarks did not impermissibly influence the jury's passions or prejudices or divert the jury from the evidence).

pursue the matter further at trial, explaining, "[A]ll I was going to be asking him about [were] rumors that I had heard, and . . . I didn't have anything substantial to fall back on." On this record, Coney has failed to demonstrate that his attorney performed deficiently.

(c) Coney argues that his trial counsel erred by failing to raise a meritorious objection to the state's use of his urine and blood test results to prove him guilty of cocaine possession. He asserts that his lawyer should have timely argued that the evidence was inadmissible because it was unlawfully seized. Coney points out that the evidence showed that he did not consent to the taking of his bodily fluids, that he was unconscious during the relevant time, and that the police had no warrant to take and search the fluids. He contends that the evidence was not admissible pursuant to OCGA § 40-5-55 (a) because there was no evidence that the police made any determination of probable cause (or even considered) that he had been driving impaired.

In *Cooper v. State*,[34] the Supreme Court of Georgia made clear: "A suspect's Fourth Amendment right to be free of unreasonable searches and seizures applies to the compelled withdrawal of blood. So too is the extraction of blood a search within the meaning of the Georgia Constitution."[35] At issue in *Cooper* was language contained in OCGA § 40-5-55 (a) that

> any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 *or if such person is involved in any traffic accident resulting in serious injuries or fatalities.*[36]

*Cooper* held that

> to the extent that OCGA § 40-5-55 (a) requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities *regardless of any determination of probable cause [of impaired driving],*

---

[34] 277 Ga. 282 (587 SE2d 605) (2003).
[35] Id. at 285 (III) (citations and punctuation omitted).
[36] Id. at 282, quoting OCGA § 40-5-55 (a) (emphasis supplied).

it authorizes unreasonable searches and seizures in violation of the State and Federal Constitutions.[37]

The state does not claim that its purpose for obtaining the test results related to a determination of probable cause that Coney had been driving impaired. Indeed, the state asserts in its appellate brief that it "made it clear to the [trial court] that it did *not* intend to indicate that Defendant was 'under the influence' of an illegal substance, but merely that it 'was present' in his system."[38]

Under these circumstances, Coney has shown that his bodily fluids were unlawfully seized, and therefore the test results would have been properly excluded upon timely motion to suppress.[39] Trial counsel erred by failing to seek suppression.

Furthermore, Coney has shown that the error was prejudicial under *Strickland*.[40] The state showed that Coney was the most recent driver of the car in which cocaine was found under the driver's seat. Coney denied that the contraband apparently hidden in the car was his, and his attorney argued during closing that other individuals had equal opportunity to possess it. There was evidence affirmatively showing that persons other than Coney had equal opportunity to possess the cocaine. Two passengers were in the car with Coney; one was sitting in the front passenger seat; the other one was sitting behind the driver's seat; and after Coney abruptly exited the car, the passengers did not get out of the car until commanded to do so by the police officer.

Under this evidence, no presumption arose that Coney, as driver of the vehicle, was in possession of the contraband found therein.[41] And the burden remained with the state to prove "without benefit of any presumption against the defendant . . . that the accused was in possession of the contraband."[42]

"Evidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction."[43] The state did show that Coney

---

[37] *Cooper*, supra at 291 (V) (emphasis supplied); compare *Hough v. State*, 279 Ga. 711, 713 (1) (620 SE2d 380) (2005) ("where an individual has been involved in a traffic accident resulting in serious injuries or fatalities *and* the investigating law enforcement officer has probable cause to believe that the individual was driving under the influence of alcohol or other drugs, the constitutional infirmities at play in *Cooper* are no longer present").

[38] (Emphasis supplied.)

[39] See *State v. Poppell*, 277 Ga. 595-596 (2) (592 SE2d 838) (2004); *Cooper*, supra at 292.

[40] Supra.

[41] *Turner v. State*, 276 Ga. App. 381, 382 (623 SE2d 216) (2005) (explaining application of equal access rule).

[42] Id.

[43] Id. at 383.

had sped away from the traffic stop and later fought to escape arrest, and the state argued during closing that Coney's attempts to flee were circumstantial evidence of his guilt.[44] However, this court has held that evidence of "mere spatial proximity combined with flight is insufficient to connect a defendant to nearby contraband."[45] Even though the jury might have found in this case more than mere spatial proximity and flight, without the corroborating evidence that Coney had used recently cocaine and marijuana — which we have held as inadmissible upon proper motion, a reasonable probability exists that the outcome of his trial with respect to the drug charge would have been different. Accordingly, Coney has demonstrated that he was deprived of effective counsel in this regard, and his conviction for cocaine possession is reversed.[46]

4. Notwithstanding, the evidence, construed in support of the verdicts, was sufficient for the jury to find Coney guilty of the crimes for which he was convicted.[47] With respect to aggravated assault, the indictment sufficiently "put appellant on notice that he could be convicted for aggravated assault if he committed a simple assault in either manner contained in the simple assault statute, so long as the State proved that he did so by use of a gun."[48] And the evidence was sufficient to find that he committed aggravated assault under both manners of simple assault. Therefore, Coney may be retried on the charges of aggravated assault and cocaine possession.[49]

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 19, 2008.

*Mark B. Beberman*, for appellant.
*Steven Askew, District Attorney, Matthew P. Brown, Assistant District Attorney*, for appellee.

---

[44] See generally *Renner v. State*, 260 Ga. 515, 518 (3) (b) (397 SE2d 683) (1990) (in a criminal case, state may offer evidence of the defendant's flight from the scene and argue that it is circumstantial evidence of his guilt).

[45] *Brown v. State*, 285 Ga. App. 330, 332 (646 SE2d 273) (2007); *Johnson v. State*, 282 Ga. App. 52, 54 (637 SE2d 775) (2006); *Hughes v. State*, 215 Ga. App. 6, 9 (449 SE2d 547) (1994) (neither presence nor flight, nor both together, without more, is conclusive of guilt); *Myers v. State*, 193 Ga. App. 372, 373 (387 SE2d 640) (1989).

[46] See *Turpin v. Helmeci*, 271 Ga. 224, 226-227 (518 SE2d 887) (1999) (counsel's failure to raise meritorious objection to state's use of urine test result to prove defendant guilty of drug possession amounted to ineffective assistance).

[47] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[48] *Chase*, supra at 638 (1) (punctuation omitted).

[49] See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).