## A98A1213. SALTERS v. THE STATE.
### (506 SE2d 221)

McMurray, Presiding Judge.

Defendant Jerome Salters, also known, inter alia, as Jerome Jermaine Salter, Kenny Johnson, Minkey, Black Ice, and Jerome Germain Salter, was tried before a jury and found guilty of a single count of armed robbery. The evidence, viewed to support the jury's verdict, showed that on April 6, 1995, defendant took money and gold jewelry from the victim at gunpoint, in the men's room of the W. W. Law Center gymnasium.

The victim, Thomas Singleton, noticed that "[defendant] was behind [him] with a gun. . . . He [defendant] had cocked the gun, and . . . had the gun pointed. . . . [Thomas Singleton] was looking at [defendant] face-to-face . . . [as defendant] had [the gun] pointed in [Thomas Singleton's] face." Defendant said: " 'Give it up.' " Thomas Singleton gave defendant $90 he had in his pocket. "Then [defendant] told [the victim] to lay down on the floor." Defendant then "noticed [the victim's] necklace . . . [a]nd told [the victim] to give him . . . [the] necklace, too." Holding the gun in his right hand, defendant "took [the necklace] with his left hand." Defendant told the victim "don't come after him unless [the victim were] strapped." Thomas Singleton thought defendant's handgun was a "three-eighty hand-

gun, . . . semiauto[matic]. . . ."

. Within a week, the victim saw defendant at the same gym and so he "hit [defendant] with a chair." But then the victim fled, "[because he saw defendant] reaching. So, [the victim] thought he still had something." Thomas Singleton "knew [defendant] from a long time ago. [He had not] seen [defendant] in a while, but [he] knew [defendant, under the name] Minkey." Defendant was wearing starched black jeans and a green bucket hat, that is, a "hat with a brim. . . ." Thomas Singleton identified State's Exhibit 24, a photographic lineup, from which he identified defendant as the robber.

David Adams, recreation supervisor at the W. W. Law neighborhood center, noticed defendant "walking around [the center] with a [bucket] hat[,] a Yogi Bear type hat[,] a type a fisherman would use. . . ." The rule is, "once [the youths] set foot in that gym, hats off. . . ." When Thomas Singleton described to Coach Adams "what the [robber] had on . . ., [Coach Adams] realized [he] did see the man in the gym. . . . [But] any time [Coach Adams] got ready to approach [defendant,] he [defendant] kind of turn[ed] away . . . [and then] went out the back door. . . ." Coach Adams confirmed defendant was wearing "a bluish green . . . bucket . . . [with] a white T-shirt on, black pants, black jeans."

On April 13, 1995, Investigator John Cave of the Violent Crimes Unit, Savannah Police Department, was on patrol in an unmarked detective's vehicle when he observed defendant walking on Waters Avenue. Defendant "looked at the car, and as [the detectives] exited the car, [defendant] walked into the lane and then took off running. . . ." Investigator Cave "pursued [defendant] on foot." After defendant was in custody, the detectives "were alerted that a gun was found in the lane, in 31st lane." State's Exhibit 23 is a photograph of "the gun that was found in the lane[, on] the grass[,] close to a trash can." Officer J. D. Moran of the Savannah Police Department identified the handgun found in the lane as "a three-eighty Genell (phonetic), Incorporated . . . automatic."

Although defendant testified he was home with his mother at the time Thomas Singleton was robbed at gunpoint, the jury found him guilty as charged. Defendant's motion for new trial was denied and this appeal followed. *Held*:

1. In four related enumerations of error, defendant contends the trial court erred in admitting so-called similar transactions evidence. He argues the State failed to show the accused had committed the independent offense; that there was not sufficient similarity between the independent act and the case sub judice; and the State never offered a clear, narrow purpose for the admission of extrinsic offense evidence. He further contends the trial court's limiting instruction was inadequate.

Stacy Jones testified that on April 5, 1995 (the night before Thomas Singleton was robbed), defendant was walking with an acquaintance of Stacy Jones, known as Jamal. Jamal asked Stacy Jones to give them a ride in Jones' car. While Stacy Jones was driving, Jamal, seated in the front passenger's seat, "reached into his jogging pants and pulled out a Glock and cocked it and pointed it towards [Stacy Jones'] head, . . . telling [him] to, 'Give it up'. . . . But the same time [Jamal] was saying it, [Stacy Jones] had grabbed the barrel of the gun, and [he] and [Jamal were] tussling over it." Meanwhile, "Jamal was telling [defendant] to shoot [Stacy Jones], talking about, 'Shoot him, shoot him.'" Defendant, in the back seat of Stacy Jones' car, cried "'Look out,' 'cause [Stacy Jones'] car was about to run into another car. . . ." After the car skidded to a halt, Stacy Jones "opened the door . . . still holding the gun, and [he] jumped out and ran across the street. [But] then [Stacy Jones] started running back towards [his] car, and they turned right on Barnard and 38th, and . . . they just kept driving. [Stacy Jones] told [some nearby] boys if any of them got their gun, to shoot [Stacy Jones'] car, 'cause it'd been hijacked."

(a) The test for the admissibility of evidence of similar crimes or extrinsic acts by the defendant is not the number of similarities between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a person of criminal character. *Mullins v. State*, 269 Ga. 157, 158 (2) (496 SE2d 252). In the case sub judice, the trial court determined that defendant's presence during the attempted armed robbery of Stacy Jones, in which defendant's companion employed the same phrase, "Give it up," as was used during the armed robbery of Thomas Singleton, was admissible for the "purpose of proving modus operandi if the jury feels that it does. . . ."

We agree with defendant that the testimony of Stacy Jones is inadequate to demonstrate defendant's willing participation in the attempted armed robbery committed by the companion Jamal, and that this evidence is not proper "similar crimes" evidence. *Cole v. State*, 216 Ga. App. 68, 69 (1), 70 (453 SE2d 495). Nevertheless, such evidence is admissible as part of the entire res gestae. The circumstance that defendant witnessed an attempted armed robbery committed in the same manner as the indicted offense is admissible in support of the permissive inference that viewing the prior armed robbery attempt encouraged defendant's own initial perpetration of the subsequent offense. *Turner v. State*, 194 Ga. App. 878, 879 (2), 880 (392 SE2d 256). See also *Rushin v. State*, 269 Ga. 599, 600 (2) (502 SE2d 454); *Beasley v. State*, 269 Ga. 620, 622 (2) (502 SE2d 235). The trial court's reasoning was substantially correct and the first three

enumerations are without merit.

(b) After Stacy Jones testified and in its general charge, the trial court gave limiting instructions, admonishing the jury that defendant was on trial only for the particular offense alleged in the indictment; that the evidence of another transaction was admitted for the limited purpose of showing identity or modus operandi; and that, before the jury considered any such evidence, they must be satisfied that defendant is the same person as in any extrinsic acts. Defendant contends these instructions were inadequate under *Prickett v. State*, 220 Ga. App. 244, 245 (2), 246 (469 SE2d 371).

Since, in our view, the evidence is admissible as res gestae and not as similar transactions, the limiting instructions given by the trial court were entirely adequate to focus the jury's attention on the limited purpose for which the evidence was admitted, even in the absence of an instruction to consider any similarity of the two incidents.

2. Contrary to defendant's contention, the testimony of Investigator Cave, that defendant fled on sight, did not place defendant's character in issue, even if defendant were a suspect in a separate criminal investigation, for that suspicion was not mentioned before the jury.

3. The trial court did not abuse its discretion in giving a form of the jury instruction approved in *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528). *Tyson v. State*, 217 Ga. App. 428 (1) (457 SE2d 690). Additional objections are beyond the scope of the sixth error as enumerated and will not be considered.

4. After the jury foreman informed the court that the jury was at an impasse, the trial court dismissed the jurors for the night, urging them to "try to reach a unanimous verdict, and . . . ask[ing the jurors] to go home and sleep on it, pray about it. Don't discuss it with anybody. Don't discuss it with anyone. Don't allow anyone to discuss in your presence or hearing, or even among yourselves, but sleep on it, pray about it. Come back in the morning, nine o'clock, and . . . continue to talk about it." This passing reference to nondenominational divine guidance scarcely amounts to the disparagement of mercy disapproved of as improper argument in the sentencing phase of a capital trial, as in *Ford v. State*, 255 Ga. 81, 92 (8) (i-2), 93 (335 SE2d 567). We find no error. *Greene v. State*, 266 Ga. 439, 449 (26) (469 SE2d 129); *Crowe v. State*, 265 Ga. 582, 593 (18) (d) (458 SE2d 799).

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED AUGUST 21, 1998 —

*C. Jackson Burch*, for appellant.

*Spencer Lawton, Jr., District Attorney, Kimberly Rowden, Assistant District Attorney*, for appellee.