S05A1627. LLOYD v. THE STATE.
(625 SE2d 771)

HINES, Justice.

A jury found Ronald Lloyd guilty of two counts of aggravated stalking,[1] and one count each of aggravated assault,[2] simple assault,[3] and family violence battery[4] against his girlfriend and the mother of his children, Phanessa Simpson, stemming from incidents on March 10 and 13, 2002.[5] Lloyd challenges the denial of his motion for new trial on the grounds that the evidence was insufficient to support his convictions for aggravated stalking and that his trial counsel was ineffective. This case is before this Court because the Court of Appeals was equally divided on whether to affirm Lloyd's convictions and the denial of his motion for new trial on the ground of ineffective assistance of trial counsel or to reverse the judgments and remand the case for a new trial.[6] For the reasons which follow, we conclude that the judgments of conviction and the denial of a new trial should be affirmed.

---

[1] OCGA § 16-5-91 (a).

[2] OCGA § 16-5-21 (a).

[3] OCGA § 16-5-20 (a).

[4] OCGA § 16-5-23.1 (f).

[5] On February 5, 2003, Lloyd was sentenced to twenty years in prison for the aggravated assault, a concurrent ten years in prison for one of the counts of aggravated stalking, a consecutive ten years in prison for the second count of aggravated stalking, and twelve months in prison for family violence battery concurrent with each count; the court found the remaining offense to be included in the family violence battery count for the purpose of sentencing.

[6] See 1983 Ga. Const., Art. VI, Sec. V, Par. V.

The evidence construed in favor of the verdicts showed that Lloyd and Simpson had a turbulent relationship, in which Lloyd was both emotionally and physically abusive to Simpson. In 2001, Simpson was the victim of several violent attacks by Lloyd.[7] During that summer, Simpson went to Lloyd's home in Gwinnett County to visit her children, who were then staying with Lloyd, and Lloyd and Simpson got into an argument. Simpson had borrowed a friend's car for the visit, and Lloyd accused Simpson of having a sexual relationship with the owner of the car. Lloyd took the car keys out of the ignition, grabbed the insurance card, and went into his house. Simpson knocked on the door and asked for the car keys. Lloyd pinned Simpson against the wall and took her hand and "put it through" the house window. A neighbor called the police.

Later in 2001, Simpson went to Lloyd's home to babysit for the children. The resultant meeting escalated into an argument, and Simpson asked Lloyd to take her home. Simpson and the children got into Lloyd's car, and Simpson thought that Lloyd was taking her home. Instead, Lloyd told her he would not take her home, but rather to the bus station. Simpson could see that Lloyd was getting angrier and angrier, and she became afraid that Lloyd would hit her, so she replied, "[W]hatever you say, that's fine." Lloyd made a U-turn, and began to head back to his own home. He told Simpson that if she wanted to go home, she should jump out of the car. Lloyd started to yell names at Simpson, telling her that she was not a good mother. He then began to hit Simpson in the head, punch her in the face, and choke her. Lloyd pulled into a business park, pulled out a pistol, and struck Simpson in the head with the pistol, telling her that he was going to kill her. Then he sped out of the business park, put the pistol to his own head, and threatened to kill himself, Simpson, and the children. When the car slowed down, Simpson tried to open the door, and grabbed the pistol; she threw the pistol outside. Lloyd "hooked" his finger into Simpson's mouth to try and keep her in the car, but she managed to "slide" out. Simpson ran into a store and called the police. Lloyd was arrested and released on bond, subject to the condition that he was to "stay away, absolutely, directly, or indirectly, by person, telephone, messenger or any other means of communication" from Simpson.[8]

Nevertheless, Lloyd refused to let Simpson see her children unless she lived with him. Lloyd continued to show up and telephone

---

[7] There was evidence that Lloyd also physically and emotionally attacked Simpson prior to the cited instances in 2001.

[8] In fact, there were two Gwinnett County bond orders signed in July 2001, which prohibited Lloyd from any contact and communication with Simpson.

Simpson at her workplaces, and this caused her to lose several jobs. Lloyd moved into an apartment in Fulton County which Simpson leased. After Lloyd moved in with Simpson, he would drink, start an argument, and then hit Simpson. Living with him was like "walking on egg shells," and "any little thing would make him hit [Simpson]." He told Simpson that he hit her because she did not listen, did not do what he said, did not pay attention, and was not "good enough for him."

On March 10, 2002, Lloyd argued with Simpson. The argument soon became violent, and Lloyd punched Simpson in the eye and hit her face with his hand. He wrapped Simpson's face in a blanket and banged her head on the floor of the apartment. Simpson managed to escape, went to a restaurant and called the police. Lloyd drove up while Simpson was waiting for the police. The police arrived and told Lloyd not to go back to the apartment.

Three days later, on March 13, 2002, Simpson was gathering her belongings at her apartment in Fulton County, when Lloyd arrived. Lloyd banged on the locked door, and kept "clicking" it with a knife, telling Simpson that he was going to kill her. Simpson was "real scared" and called 911. The police arrived and arrested Lloyd. They found him in possession of a four-inch knife with a serrated blade.

1. Lloyd contends that the evidence at trial was insufficient to support his convictions for aggravated stalking. OCGA § 16-5-91 (a) provides in pertinent part:

> A person commits the offense of aggravated stalking when such person, in violation of a . . . condition of pretrial release . . . in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

Lloyd cites the absence of his signature on that portion of the bond orders acknowledging receipt of the bonds and consenting to the conditions therein to argue that there was no evidence that he was aware that he was not to see or contact Simpson. But the argument is unavailing, because the record shows that prior to the incidents for which he was on trial, Lloyd was well aware of the prohibition. The jury heard testimony that at a court hearing on or about March 9, 2002, the issue of Lloyd's living with Simpson in violation of the bonds was raised. The evidence was sufficient to enable a rational trier of fact to find Lloyd guilty beyond a reasonable doubt of the aggravated stalking charges. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Lloyd contends that trial counsel was ineffective in several respects. In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance was deficient and that the deficiency so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of his trial would have been different. *Sims v. State*, 278 Ga. 587, 589 (3) (604 SE2d 799) (2004), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The defendant must overcome the strong presumption that counsel's conduct was within the broad range of reasonable professional conduct. *Sims v. State*, supra at 589 (3).

(a) Lloyd asserts that trial counsel was ineffective for failing to object to testimony by Simpson and a police officer about the 2001 pistol attack on Simpson in Gwinnett County; he contends that the testimony was inadmissible because the issue of whether he had physically harmed Simpson during such incident was decided in his favor by a Gwinnett County jury. But pretermitting the merits of any such "estoppel" argument, Lloyd ignores the fact that the Gwinnett County jury acquitted him of only two of the three charges stemming from the incident. The jury found him guilty of simple battery committed against Simpson.

"[S]imple battery encompasses all forms of prohibited contact and is not limited . . . to contact that causes substantial or visible harm." *Lawson v. State*, 274 Ga. 866, 867 (2) (561 SE2d 72) (2002). Indeed, "the pertinent elements of simple battery are intentionally making insulting or provoking physical contact with another's person. OCGA § 16-5-23 (a) (1)."[9] *Basu v. State*, 228 Ga. App. 591, 592 (1) (492 SE2d 329) (1997).[10] Thus, physical harm or injury is not necessary to sustain a violation of OCGA § 16-5-23 (a) (1), and the Gwinnett County jury's verdicts did not constitute a finding that Lloyd did not attack Simpson with a pistol. Therefore, Lloyd cannot show any deficiency by counsel for not objecting to the testimony regarding the pistol attack, much less prejudice from the alleged deficiency. *Sims v. State*, supra at 589 (3).

(b) Lloyd next maintains that counsel was ineffective for not objecting to the admission of State's Exhibits 2 and 3, copies of the Gwinnett County orders outlining the conditions of Lloyd's bonds. He argues that inasmuch as the documents did not bear his signature, and the State offered no other evidence of his notice of the bond

---

[9] The count of simple battery for which Lloyd was convicted charged that Lloyd "on or about the 23rd day of July, 2001, did unlawfully intentionally make contact of an insulting and provoking nature with Phanessa Simpson, in violation of O. C. G. A. Section 16-5-23 (a) (1)."

[10] This case was in a line of cases overruled on other grounds in *Curtis v. State*, 275 Ga. 576, 578 (1) (571 SE2d 376) (2002).

conditions, the failure to object to the exhibits allowed the State to falsely create the impression that he knew not to have contact with Simpson. But Lloyd has failed to demonstrate that the lack of signatures rendered the documents inadmissible. What is more, the documents did not paint a false picture to the jury because there was other evidence that Lloyd knew of the prohibitions in regard to Simpson. See Division 1, supra. Thus, there is no deficiency by counsel in this regard. *Sims v. State*, supra at 589 (3).

(c) For the reasons stated in Divisions 1 and 2 (b), supra, there is no merit to Lloyd's assertion that his trial counsel was ineffective for not moving for directed verdicts on the aggravated stalking charges based upon lack of notice.

(d) Finally, Lloyd contends that trial counsel was ineffective for failing to object to improper comments by the assistant district attorney in opening statement and closing argument. He maintains that the comments constituted reversible error. But that is not the case.

(i) During opening statement, the assistant district attorney made comments about the 2001 incident in Gwinnett County in which Lloyd "pistol whipped" Simpson, stating, inter alia, that Lloyd had been found guilty of simple battery stemming from the incident and had violated conditions of his bond issued as a result of this same event. Here, again Lloyd makes an "estoppel" argument, urging that inasmuch as the Gwinnett County jury found him guilty only of simple battery, the allegation that he had assaulted Simpson with a pistol was decided in his favor. However, as has already been discussed, such argument is without merit, and fails to provide a basis for finding ineffective assistance of trial counsel. See Division 2 (a), supra.

(ii) Lloyd maintains that three portions of the State's closing argument were improper, and that trial counsel's failure to object and to move for a mistrial in response to such remarks constituted ineffective assistance.

Lloyd claims that the prosecutor impermissibly raised the specter of his "future dangerousness,"[11] made a "golden rule" argument,[12]

---

[11] The prosecutor commented,
   if [Lloyd] will live in open defiance of two judges, what do you think he will do to the woman that he likes to beat? What do you think that he'll do to the girl that he's been trying to dominate for nine straight years? If he won't listen to a judge and he won't listen to the cops, who will he listen to? Nobody. . . . It's time for you to tell him to stop. And if you don't tell him to stop, nobody will. Nobody can make him but you.

[12] In arguing why Simpson failed to leave the abusive situation with Lloyd, the prosecutor stated,
   If any of you had in your head, well, you know what I would have done is so and so, why don't you put yourself in the position of a 16-year-old girl who grows up only

and stated his personal belief about a witness's veracity.[13] Accepting that the comments were improper and that trial counsel was deficient for failing to object and move for a mistrial in response to the remarks, that is not the end of the inquiry, for deficient performance, alone, does not amount to ineffective counsel. *Sims v. State*, supra at 589 (3). Lloyd must establish that counsel's inaction was so prejudicial to his defense that, but for the deficiency, there was a reasonable probability that the outcome of the trial would have been different. *Fulton v. State*, 278 Ga. 58, 65 (8) (597 SE2d 396) (2004). This is not a situation of a constructive denial of counsel, so Lloyd must demonstrate actual prejudice. See *Turpin v. Curtis*, 278 Ga. 698, 699 (1) (606 SE2d 244) (2004).

Citing *Collier v. State*, 266 Ga. App. 345, 354 (2) (b) (596 SE2d 795) (2004), Lloyd argues that the outcome of his trial would have been different, not because the jury would have reached different verdicts, but because the case would never have been submitted to the jury if his attorney had moved for a mistrial. However, Lloyd cannot show that a mistrial was required. Whether to grant a mistrial for improper argument is a matter largely within the trial court's discretion. *Pace v. State*, 271 Ga. 829, 841 (27) (524 SE2d 490) (1999). The trial court has other options, including the rebuke of counsel and providing curative instructions. See OCGA § 17-8-75.[14] Moreover, even when an objection to improper argument is sustained but a mistrial is denied, other action, including the giving of curative instructions, is not mandatory. *Foshee v. State*, 256 Ga. 555, 556 (1) (350 SE2d 416) (1986). In any event, in this case it would not have been reversible error for the trial court to refuse a mistrial because the evidence of Lloyd's guilt was overwhelming, and it is highly probable that any improper argument did not contribute to the verdicts. *Pace v. State*, supra at 841 (27); *Sears v. State*, 259 Ga. 671, 672 (5) (386 SE2d 360) (1989).

*Judgments affirmed. All the Justices concur.*

---

knowing this. You understand her concept of boyfriend, her concept of man is somebody who beats you and won't let you see your kids.

[13] The prosecutor stated,

Or if you don't like the cop for some reason – I thought they were all credible, but that's for you to decide.

[14] OCGA § 17-8-75 provides:

Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

DECIDED JANUARY 17, 2006 —
RECONSIDERATION DENIED FEBRUARY 13, 2006.

*Blend & Michael, James D. Michael*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Marc A. Mallon, Assistant District Attorneys*, for appellee.