## A09A1594. EMMANUEL v. THE STATE.
(685 SE2d 361)

JOHNSON, Presiding Judge.

A jury found Christopher Emmanuel guilty of two counts of aggravated assault. Emmanuel appeals, alleging (1) the evidence was insufficient to support the jury's verdict; (2) the trial court erred in refusing to charge the jury on reckless conduct as a lesser included offense of aggravated assault; (3) the trial court erred by failing to charge the jury on the definition of "simple assault," an essential element of the offense of aggravated assault; (4) the trial court erred in permitting the state to make improper "golden rule" and "future dangerousness" arguments to the jury during its closing; (5) trial counsel was ineffective for failing to object, request curative instructions, or move for a mistrial when the state made improper arguments during its closing; and (6) the trial court erred in admitting similar transaction evidence. We find no reversible error and affirm Emmanuel's convictions.

1. In reviewing Emmanuel's sufficiency of the evidence challenge, we construe the evidence in the light most favorable to the jury's verdict; moreover, we do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the jury was authorized to find Emmanuel guilty of the crimes charged beyond a reasonable doubt.[1] So viewed, the evidence shows that Emmanuel supported a rap group known as the Southside Mafia. On June 4, 2004, the Southside Mafia and another rap group known as the Hit Squad performed at a skating rink. Emmanuel attended the performance. Several members of the Hit Squad took offense to the Southside Mafia's performance, and an altercation arose between the two groups. The police intervened, and the groups dispersed, but agreed to meet at a local park two days later to fight and "settle it."

On the day of the fight, members of the Southside Mafia and various supporters went to the park armed with guns. Emmanuel removed a rifle from the car he rode in and placed it in the woods behind the picnic area. The park was crowded, with people taking part in various recreational activities. Among the visitors was a grandmother and her four-year-old grandson, who was trying out a

---

[1] See *Taylor v. State*, 296 Ga. App. 212 (1) (674 SE2d 81) (2009).

new bicycle.

As the Southside Mafia members and supporters waited in the park, a red car occupied by Hit Squad members entered the parking lot. The car approached an area where the Southside Mafia's leader was standing, and a gun emerged from the car window. Shots were fired almost immediately by the Southside Mafia group and Hit Squad group. The gunshots continued and moved toward the parking lot as the red car left the area. Members of the Southside Mafia group testified that Emmanuel ran to the woods to retrieve his gun and shot the rifle "towards the street." Emmanuel admitted firing the rifle at the red car about eight times.

Although they tried to run for cover, the grandmother and her four-year-old grandson were caught in the gunfire. A bullet struck the grandmother in the wrist, severely injuring her hand. The child was shot in the chest and died from his wounds.

Emmanuel argues that the evidence was insufficient to support his convictions because expert testimony at trial indicated that it did not appear that the four-year-old or the grandmother was struck by a bullet from a rifle like the one fired by Emmanuel. However, the expert also testified that he could not totally eliminate the rifle used by Emmanuel as the one that killed the four-year-old. And, under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." A person is concerned in the commission of a crime if he "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime."[2] Mere presence at the scene or approval of the criminal act is not sufficient. Instead, "[p]roof that the defendant share[d] a common criminal intent with the actual perpetrators is necessary, and may be inferred from the defendant's conduct before, during, and after the crime."[3]

Based on the evidence presented in this case, the jury was authorized to find that Emmanuel was a party to the aggravated assaults. Although it is unclear who fired first in the melee, Emmanuel admittedly fired his weapon. The jury could also find that, even if the victims were not hit by Emmanuel's bullets, they were struck when Hit Squad members or other Southside Mafia members and supporters fired during the gun battle. Simply put, Emmanuel and Southside Mafia members agreed to meet at the park to "settle" a dispute. Emmanuel took a rifle out of the car, placed it nearby, subsequently retrieved the rifle, and intentionally fired the rifle in

---

[2] OCGA § 16-2-20 (b) (4).

[3] (Citation and punctuation omitted.) *Garcia v. State*, 290 Ga. App. 164, 165 (2) (658 SE2d 904) (2008).

the crowded public park.

"Under these circumstances, a reasonable factfinder could determine that [Emmanuel] and the other participants in the gun battle shared a common criminal intent — to assault each other with guns, intent that then transferred to the innocent bystanders."[4] The evidence was sufficient for a rational trier of fact to find Emmanuel guilty beyond a reasonable doubt of two counts of aggravated assault.

2. Emmanuel argues the trial court erred in refusing to give a jury instruction on reckless conduct. Emmanuel, however, raised a justification defense at trial, arguing that he "fired back" at individuals who shot at him. With this defense, Emmanuel conceded that his act was intentional, but asserted that he committed the act "for an excusable reason, such as self-defense."[5]

Under these circumstances, the trial court properly refused to charge the jury on reckless conduct. "[T]he crime of reckless conduct is, in essence, an instance of criminal negligence, rather than an intentional act, which causes bodily harm to or endangers the bodily safety of another."[6] Emmanuel has pointed to no evidence that his weapon discharged as a result of negligence. Instead, he deliberately fired the rifle in the park and toward the Hit Squad car. He was either guilty of aggravated assault or justified in firing his gun, and reckless conduct was not at issue.[7]

3. Emmanuel asserts the trial court erred in failing to give a jury instruction on simple assault. However, "[w]e will not reverse a conviction on the basis of an erroneous jury instruction unless the instruction, viewed as part of the whole charge, is harmful."[8] While we have previously held it harmful error for a trial court to fail to charge the statutory definition of assault in a case where the jury could find a defendant guilty of aggravated assault based merely on criminal negligence rather than intent,[9] this is not such a case.

As we found in Division 2, reckless conduct was not an issue in the case. Likewise, negligence was not an issue in the case. Emmanuel does not dispute that he intentionally fired his rifle in the park, but claims he acted in self-defense. "Thus, any error in the charge would not have affected the outcome of the case, as [Emmanuel] admitted to actions which would constitute aggravated assault

---

[4] (Citations omitted.) *Taylor*, supra at 213 (1) (a).

[5] *Berry v. State*, 282 Ga. 376, 381 (5) (651 SE2d 1) (2007).

[6] (Citation and punctuation omitted.) *Riley v. State*, 250 Ga. App. 427, 429 (2) (551 SE2d 833) (2001).

[7] *Taylor*, supra at 217 (5).

[8] *Giddens v. State*, 276 Ga. App. 353, 356 (2) (623 SE2d 204) (2005).

[9] See *Coney v. State*, 290 Ga. App. 364, 368-369 (1) (659 SE2d 768) (2008).

unless the jury found he acted in self-defense."[10] We do not find harmful error given the circumstances of this case.

4. Emmanuel contends the trial court erred in permitting the state to make improper "golden rule" and "future dangerousness" arguments during its closing arguments. Specifically, Emmanuel asserts the following arguments by the state were improper: (a) arguing that a not guilty verdict would be the same as giving the defendants' guns back to them; (b) asking the jurors to imagine the anguish one of the victims felt as "that bullet tore through his young body"; (c) asking the jurors if the victim would be the "last baby" killed if a "not guilty" verdict was rendered; (d) stating, "he threatens the innocent who spares the guilty"; (e) commenting that the jurors cannot use their park because "thugs" have taken it over and use it as a battleground; and (f) referring to the boy's empty place at the family table and telling the jury the boy is now "in a cave of loneliness." We find no error.

It is well established that in a classic "golden rule" argument, "jurors are invited to place themselves in the victim's place in regard to the crime itself."[11] Here, the prosecutor's comments did not entreat the jury to place themselves in the victim's shoes with regard to the crime committed. Rather, the comments appealed "to their desire to create a safe community."[12] And a prosecutor generally may appeal to the jury to convict for the safety of the community.[13] While the better practice would have been for the prosecutor not to refer to the victims in making his closing argument, we cannot say the trial court erred in allowing the comments.

And, although the prosecutor made "future dangerousness" arguments with regard to giving the guns back to the defendants and asking whether the victim would be the last child shot if a not guilty verdict was rendered, the record shows that the trial judge took corrective action and admonished the prosecutor to confine his arguments to the facts of the case. We do not find reversible error in this case. Whether to grant a mistrial for improper argument is a matter within the discretion of the trial court, and even when an objection to improper argument is sustained but a mistrial is denied, other action, including the giving of curative instructions, is not mandatory.[14]

---

[10] *Giddens*, supra.

[11] (Citation and punctuation omitted.) *Hines v. State*, 246 Ga. App. 835, 837 (3) (541 SE2d 410) (2000).

[12] Id.

[13] See *Davis v. State*, 266 Ga. 801, 804 (8) (471 SE2d 191) (1996); *Philmore v. State*, 263 Ga. 67, 69 (3) (428 SE2d 329) (1993).

[14] See *Lloyd v. State*, 280 Ga. 187, 192 (2) (d) (ii) (625 SE2d 771) (2006).

Moreover, considering the overwhelming evidence of Emmanuel's guilt, which included his own admission that he fired a gun in the public park, it is highly unlikely that this portion of the prosecutor's closing argument contributed to the guilty verdict.[15]

5. As to some of the prosecutor's closing arguments listed in Division 4, Emmanuel contends his trial counsel was ineffective for failing to object, request curative instructions, or move for a mistrial based on the prosecutor's comments. We find no reversible error. To prevail on his claim of ineffectiveness, Emmanuel must show that his counsel was deficient and that, but for the deficiency, there was a reasonable probability that the outcome of his trial would have been different.[16] There is a strong presumption that trial counsel provided effective representation, and we will not use hindsight to judge counsel's reasonable trial strategy or tactics.[17]

Here, the trial judge noted in its March 4, 2009 order that trial counsel testified she did not object or move for a mistrial in response to the prosecutor's alleged golden rule and future dangerousness arguments because (1) while some of the comments were harsh and inflammatory, she believed they were not objectionable, and (2) she believed that any interruption would cause the prosecutor to argue more vehemently and she wanted him to finish his argument and be seated. She also believed the jury was sophisticated enough to know it was closing argument and not base a two-week trial on something said during closing argument.

Emmanuel's attorney "reasonably chose silence, and we will not use hindsight to second-guess that decision on appeal."[18] Moreover, Emmanuel has failed to show that but for counsel's failure to move for a mistrial or object to the comments, there was a reasonable probability that he would not have been convicted. Emmanuel admitted he was in a public park firing a gun at a car. This overwhelming evidence negates any prejudice to his defense from his counsel's alleged inaction.[19]

6. Emmanuel contends the trial court erred in admitting similar transaction evidence over his objection that the prior transaction was not similar. Specifically, the evidence showed that Emmanuel previously pled guilty to two counts of aggravated assault involving a drive-by shooting. While the evidence showed that Emmanuel did not fire any shots in that incident, he drove the car to the scene of the shooting with two of the co-defendants in the present case, and he

---

[15] See *Wyatt v. State*, 267 Ga. 860, 865 (2) (b) (485 SE2d 470) (1997).

[16] *Braithwaite v. State*, 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002).

[17] Id.

[18] Id. at 886.

[19] Id.; see also *Nichols v. State*, 281 Ga. 483, 486 (2) (c) (640 SE2d 40) (2007).

retrieved one of the weapons used in the prior incident from a friend's house. This weapon was the same rifle used by Emmanuel during the park shooting. We find no error.

Evidence of similar crimes or extrinsic acts committed by a defendant may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a person of criminal character.[20] Here, the evidence showed Emmanuel's bent of mind and course of conduct. Emmanuel willingly participated in a prior shooting, which involved two of the co-defendants in the present case, and he retrieved the same rifle he used in the present case for use in the prior case. We conclude that there was a sufficient connection between the crime at issue and the similar transaction crime. The trial court did not err in admitting the similar transaction evidence.

*Judgment affirmed. Ellington and Mikell, JJ., concur.*

DECIDED OCTOBER 7, 2009

*David J. Walker*, for appellant.
*Tracy G. Lawson, District Attorney, Billy J. Dixon, Assistant District Attorney*, for appellee.

---

[20] See *Salters v. State*, 234 Ga. App. 83, 85 (1) (a) (506 SE2d 221) (1998).
[1] *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004).