### S09A1544. FUTCH v. THE STATE.
(687 SE2d 805)

HINES, Justice.
Jason William Futch appeals the denial of his motion for new trial following his convictions for felony murder and possession of a firearm during the commission of a felony, in connection with the fatal shooting of Michael Weaver. His sole challenge is that his trial

counsel was ineffective. Finding that the challenge is without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. In May of 2003, Futch and a friend rented an apartment in Atlanta so the two could attend summer classes at Georgia State University. On the night of August 15, 2003, following a concert, a group of college-aged people, including Michael Weaver, gathered at the young men's apartment. Futch had been drinking alcohol earlier. As some in the group were getting ready to go to sleep, and Weaver was attempting to do so in a recliner, Futch stated to one of the men, "Let's flip [Weaver] over, and then, if he gets up, when he gets up, we'll kick his ass." The two men "flipped" Weaver out of the chair, and Weaver and Futch began what at first appeared to be a friendly wrestling match. However, after Weaver pinned Futch to the floor, Futch began "to lose it a little bit," and started cursing. Futch ordered Weaver to leave the apartment, stating, "I'm going to fucking kill you." Others at the gathering intervened and sent Weaver to a bathroom down the hall and directly across from Futch's bedroom while they attempted to calm Futch down. Futch freed himself from the hold of his friends and went into his bedroom. There he took a 12-gauge shotgun from his closet, "swinging" it around, and again stated that he was going to kill Weaver. Although two of the men attempted to "talk [Futch] out of the situation" with one of them unsuccessfully attempting to wrest the weapon from Futch, Futch raised the shotgun, aimed it at the closed bedroom door in the direction of the bathroom in which Weaver was located, and fired the shotgun; the shot penetrated the hollow-core bedroom and bathroom doors and hit Weaver. Weaver screamed, walked into the living room and was then helped out into the hallway outside the apartment. As several of the men tried to help Weaver, Futch came

---

[1] The crimes occurred on August 16, 2003. On March 26, 2004, a Fulton County grand jury returned an eight-count indictment against Futch: Count 1 – the malice murder of Michael Weaver; Count 2 – the felony murder of Michael Weaver while in the commission of aggravated assault; Count 3 – the aggravated assault with a deadly weapon of Michael Weaver; Count 4 – the aggravated assault of Patrick Leonard; Count 5 – the aggravated assault of Jarred Ferrell; Count 6 – possession of a firearm during the commission of the felony of aggravated assault against Michael Weaver; Count 7 – possession of a firearm during the commission of the felony of aggravated assault against Patrick Leonard; and Count 8 – possession of a firearm during the commission of the felony of aggravated assault against Jarred Ferrell. Futch was tried before a jury December 14-17, 2004, and was found guilty of Counts 2, 3, and 6; he was found not guilty of the remaining counts. On December 21, 2004, Futch was sentenced to life in prison on Count 2, and a consecutive five years in prison on Count 6; Count 3 merged for the purpose of sentencing. A motion for new trial was filed on January 12, 2005, and an amended motion for new trial was filed on August 7, 2007. The motion for new trial, as amended, was denied on April 6, 2009. A notice of appeal was filed on May 4, 2009, and the case was docketed in this Court on June 2, 2009. The appeal was argued orally on September 21, 2009.

into the hallway, and told Weaver, "Get-up, you mother-fucker. You are going to be alright." One of the men ordered Futch to leave, but he returned shortly and stated, "Just tell the police I shot him. I'm going to jail anyway."

Weaver was pronounced dead upon arrival at the hospital. The shotgun pellets had punctured Weaver's lungs and aortic artery, causing bleeding into his chest cavity.

1. The evidence was sufficient to enable a rational trier of fact to find Futch guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Futch contends that his trial counsel provided ineffective assistance because of trial counsel's failure in several respects. In order to prevail on his claims of ineffectiveness, Futch must demonstrate that his trial attorney's performance was deficient and that the deficiency so prejudiced him that a reasonable probability exists that, but for his attorney's errors, the outcome of his trial would have been different; Futch must overcome the strong presumption that counsel's actions fell within the broad range of professional conduct. *Jarvis v. State*, 285 Ga. 787 (683 SE2d 606) (2009).

(a) Futch contends that his trial counsel was ineffective because of counsel's failure to "investigate, consider, or present the full range of circumstances connected with [Futch's] conduct, acts, and mental state" in regard to Futch's diagnosed Attention Deficit Disorder ("A.D.D."), and principally his asserted misdiagnosis of and consequent mistreatment for such disorder. Trial counsel was fully aware of Futch's A.D.D. diagnosis and his prescribed medications prior to trial. Counsel believed that the "totality of the circumstances" of the shooting amounted to involuntary manslaughter; to that end, counsel sought to present to the jury evidence of the A.D.D. diagnosis and the medications Futch had been taking along with Futch's "excessive use of alcohol" prior to the killing, in an attempt to negate the State's proposition that Futch intended to shoot the victim. However, over defense counsel's argument, the trial court granted the State's motion in limine to exclude such evidence.

Futch maintains that the adverse ruling was the result of trial counsel's alleged inadequacy. Specifically, he complains that despite being informed by Futch's family of his A.D.D. and medications, counsel did not further investigate Futch's diagnosis and treatment by consulting with Futch's treating psychiatrist or any experts about the prescription drugs; that such omission resulted in the trial court improperly excluding the evidence of the A.D.D. diagnosis or of prescription medications seized at the crime scene; that had counsel performed the cited investigation, the jury could have considered the fact that Futch was misdiagnosed with A.D.D. as well as the dramatic

and adverse impact that A.D.D. medications have on an individual without A.D.D.; that such evidence would have demonstrated that the prescription drugs and alcohol, in a misdiagnosed person, tend to cause aggression and violence, resulting in Futch being able to demonstrate his lack of requisite intent. But, Futch's arguments are unavailing.

Insofar as Futch calls into question his attorney's lack of further investigation into Futch's A.D.D., assuming the A.D.D. was correctly diagnosed and medicated, the asserted deficiency does not aid Futch in his contention of counsel's ineffectiveness. At the hearing on the motion for new trial, as amended, Futch's offered expert in psychiatry testified that in the case of correctly diagnosed A. D. D., the medicines taken by Futch would not have an adverse effect, but instead would help the individual to concentrate and to be more focused.

As to Futch's pivotal assertion of counsel's inadequacy for failing to investigate, and thus, find the claimed misdiagnosis of A.D.D., Futch has not shown that trial counsel was deficient for failing to question the A.D.D. diagnosis. Even assuming the relevance and admissibility of evidence of the effect of Futch's medications in the case of misdiagnosed A.D.D., trial counsel cannot be found to be deficient. "The reasonableness of counsel's conduct is to be viewed as of the time of trial and under the circumstances of the case. It is not to be viewed by hindsight." *Jones v. State*, 282 Ga. 306, 308 (6) (647 SE2d 576) (2007). There is no evidence that prior to trial, Futch or any of his family was suspect of the diagnosis or treatment by Futch's long-time psychiatrist or informed trial counsel of any factors which would or should have given counsel any reason to suspect a misdiagnosis or improper treatment. Under these circumstances, it cannot be said that trial counsel's acceptance of the medical diagnosis made by Futch's own doctor constitutes a professional deficiency, that is, that it was outside the range of professional conduct. *Jarvis v. State*, supra.

(b) In its instruction to the jury on the commission of aggravated assault by use of a deadly weapon, the trial court charged:

> In deciding whether the alleged instrument was a weapon capable of causing death, you may consider the direct proof of the character of the weapon, any exhibition of it to the jury, evidence of the nature of any wound or absence of wound or other evidence of the capability of the instrument. *A firearm when used as such is a deadly weapon as a matter of law.* (Emphasis supplied.)

Futch contends that the italicized portion of the charge was error

because it was tantamount to a directed verdict on the critical issue of intent, thereby relieving the prosecution of its burden of proof, and that trial counsel was ineffective for failing to challenge the "tainted" charge by not properly reserving objections to the court's instructions.[2]

The hearing on the motion for new trial, as amended, reveals that trial counsel intended to reserve objections to the jury instructions, when counsel responded to the trial court's query about objections at that time, stating: "None at this time, your honor."[3] It is true that such a response has been deemed insufficient to reserve the right to object in a motion for new trial or on appeal. See *Brown v. State*, 278 Ga. 724, 730 (8) (609 SE2d 312) (2004). However, assuming that trial counsel did not effectively reserve an objection to the charge at issue, this does not aid Futch's claim of ineffectiveness because the language, which is from the pattern charge,[4] is a correct statement of the law and does not improperly direct a finding on the question of intent. See *Chappell v. State*, 290 Ga. App. 691 (659 SE2d 919) (2008); *Coney v. State*, 290 Ga. App. 364, 366 (1) (659 SE2d 768) (2008). Compare *Harris v. State*, 273 Ga. 608 (543 SE2d 716) (2001). Thus, there is no shown deficiency or prejudice therefrom. *Jarvis v. State*, supra.

(c) There is likewise no merit to Futch's further contention that trial counsel was ineffective for failing to "counter prosecutorial misconduct" by not objecting, requesting curative instructions, and moving for a mistrial when the prosecutor allegedly made an impermissible "golden rule" argument[5] and improperly commented on Futch's silence.[6] A "golden rule" argument directly or indirectly tells the jurors that they should put themselves in the injured person's place and render a verdict that they would wish to receive in the injured person's position. *Jackson v. State*, 282 Ga. 494, 499

---

[2] Futch's trial occurred prior to July 1, 2007, the effective date of OCGA § 17-8-58, which requires a criminal defendant to make specific objection to a jury charge prior to the jury retiring to deliberate.

[3] In fact, trial counsel testified that "it was my understanding that the court knew that we were reserving our objections, and it was my intention at the time to reserve any objections to the charge for later."

[4] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 2.20.22.

[5] The prosecutor apologized to the jury for any discomfort caused at the beginning of the trial when the prosecutor pointed the shotgun in the direction of the jury, and stated:
But you know what it made me think about? How Patrick [Leonard] and Jarred [Ferrell] must have felt when he had that gun and swung it at them, the sense of fear that they felt with that 12-gauge pump action shotgun pointing directly at them. He's guilty of those counts as well.

[6] The prosecutor stated:
Did anybody come in here and tell you that [Futch] apologized? Did anybody tell you that his words after the incident were, I didn't mean to do it? No.

(5) (651 SE2d 702) (2007). The prosecutor's comments did not ask the jurors to render the verdict that they would wish to receive in the injured person's position. Even assuming arguendo, that the comments amounted to a "golden rule" argument, and therefore, that trial counsel was deficient, Futch cannot meet his burden of demonstrating prejudice. *Jarvis v. State*, supra. Futch cannot show that a mistrial was required. *Lloyd v. State*, 280 Ga. 187, 192 (2) (d) (ii) (625 SE2d 771) (2006). What is more, Futch was acquitted of the aggravated assault counts referenced by the prosecutor.

As to trial counsel's conduct with regard to the prosecutor's purported reference in closing argument to Futch's silence, Futch failed to question trial counsel about it at the motion-for-new-trial hearing; thus, any decision not to object is presumed to be a strategic one which will not support a claim of ineffective assistance of counsel. *John v. State*, 282 Ga. 792, 796 (7) (c) (653 SE2d 435) (2007).[7]

3. Finally, Futch urges that taking into account all of trial counsel's acts and omissions as set forth in the preceding enumerations of error, there is no question that his right to effective counsel was violated, that is, he asks this Court to consider the cumulative effect of trial counsel's errors as authorized in *Schofield v. Holsey*, 281 Ga. 809 (642 SE2d 56) (2007). But, Futch "has failed to substantiate most of the asserted deficiencies of trial counsel and has failed to show prejudice sufficient to sustain his claim." *Jarvis*, supra at 791 (2) (d), n. 4.

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 25, 2010.

*Michael K. McIntyre, Palmer C. Singleton III, Harriet V. Smith, John R. Martin*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Sheila E. Gallow, Assistant Attorney General*, for appellee.

---

[7] In argument, Futch also complains of other alleged instances of prosecutorial misconduct including "inflammatory references" and "misstatements of law and inappropriate appeals to civic duty," but again Futch failed to make any inquiry about such instances at the hearing on the motion for new trial, as amended.