### A09A2250. SEWELL v. THE STATE.
(690 SE2d 634)

ANDREWS, Presiding Judge.

George Sewell appeals from the judgment entered after a jury found him guilty of rape, aggravated sexual battery, and aggravated assault. After reviewing the record, we conclude there was no error and affirm.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The evidence at trial, viewed in the light most favorable to the verdict, was that the victim and a friend went to a nightclub to celebrate the victim's job promotion. On leaving the nightclub, they were approached in the parking lot by a man who told the victim that

---

[17] *Ray v. State*, 292 Ga. App. 575, 577 (2) (665 SE2d 345) (2008).

his friends had left him stranded and he needed a ride home. He offered to pay her $20 if she would give him a ride and the victim agreed. The man got into the back seat, the victim drove, and her friend was in the front passenger seat. The victim followed the man's directions to an apartment complex. When she stopped the car and turned around, she saw that the man was holding a gun to her friend's head. The man ordered both women to give him their money and jewelry and then told the victim's friend to get out of the car.

The man told the victim to start driving and they drove to Auburn Avenue in Atlanta. The man directed the victim to a secluded spot behind a gas station where he forced her to perform oral sex on him, raped her, and stuck the barrel of his gun in her vagina.

At some point, the victim put her clothes back on and the man told her to drive to the "AU Center." She told him that she did not know where that was and he shot her in the arm. The victim said that she kept driving for about five or ten minutes, but when they arrived at the Five Points MARTA station she saw some people and jumped out of the car while it was still moving. The victim ran to a parked police car and the officer called an ambulance.

After the victim was released from the hospital, she gave officers a description of her attacker and an officer did a composite drawing from that description. One of the officers, who had seen Sewell before, said the drawing looked a lot like Sewell. The victim was shown nine photographs and she picked Sewell out as the man who attacked her. The victim stated that she had no doubt about the identity of the man in the photograph. The victim was in the courtroom for the preliminary hearing, and when they brought Sewell in, she recognized Sewell as the man who attacked her. The victim also pointed Sewell out at trial as the man who attacked her and stated that she had no doubt that he was her attacker.

The victim's friend testified at trial and identified Sewell as the man who got in the car with them and later robbed her and told her to get out of the car.

Sewell testified in his own defense. He stated that he had never seen the victim before and denied any knowledge of the crimes. Sewell testified that he was working at the Royal Peacock, a reggae club, at the time of the crime.

The jury convicted Sewell on the counts of rape, aggravated assault, and aggravated sexual battery. This appeal followed.

Although not enumerated as error, we conclude that the evidence set out above was sufficient for the jury to find Sewell guilty of the crimes charged beyond a reasonable doubt. *Jackson*, supra.

1. On appeal, Sewell argues that he received ineffective assistance of counsel. He claims that counsel should have cross-examined

the detective on his police report and should have objected to improper remarks in the prosecutor's closing argument.

"To establish ineffective assistance of counsel, [a defendant] must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984)." *Gross v. State*, 262 Ga. 232, 233 (1) (416 SE2d 284) (1992). The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel. Id. Further, Sewell must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct. *Snyder v. State*, 201 Ga. App. 66, 69 (8) (410 SE2d 173) (1991). A trial court's finding that a defendant has not been denied effective assistance of counsel will be affirmed unless clearly erroneous. *Warren v. State*, 197 Ga. App. 23, 24 (1) (397 SE2d 484) (1990).

Sewell argues that the officer, who testified that the victim did not appear to have been drinking, should have been cross-examined about his police report in which he checked "drinking" on the line that provided for an indication of either "sober," "drinking," or "drunk." At trial, the detective testified that he saw the victim in the ambulance and there was no indication that she had been drinking. The detective also testified that he would have put it in his report if he thought she had been drinking.

After the detective testified, defense counsel looked at the report and realized that the detective had, in fact, indicated in his report that the victim had been drinking. Accordingly, the detective was called back to the stand and, outside the presence of the jury, questioned by defense counsel. The detective stated that he made a mistake in his report and if there were evidence that the victim had been drinking it would have been in his notes. Defense counsel then stated: "Judge, I don't think I'll call him."

Defense counsel died before the motion for new trial could be heard, and therefore there is no evidence as to why counsel made the decision not to question the detective on his report. However, the record shows that he considered raising the issue and then, after questioning the witness, made a decision not to call the detective back to the stand and have him testify once more that he was sure the victim had not been drinking. This was trial strategy and not ineffective assistance. See *Paige v. State*, 277 Ga. App. 687, 692 (627 SE2d 370) (2006) (scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel).

Sewell also argues that counsel was ineffective for failing to object to comments made by the prosecutor during closing argument.

YALE LAW LIBRARY

The prosecutor stated: "And one of the interests that the State has is to not only punish but to prevent somebody from committing this kind of act again. . . . And I hope you'll do everything you can do to see that George Sewell doesn't do this again."

"It is manifestly improper for a prosecutor to argue to the jury during the guilt-innocence phase of any criminal trial that if found not guilty, a defendant poses a threat of future dangerousness." *Wyatt v. State*, 267 Ga. 860, 864 (2) (b) (485 SE2d 470) (1997). However, we find no merit to Sewell's claim that this was ineffective assistance. First, the jury had already heard the remarks and Sewell has failed to overcome the strong presumption that the inaction was a strategic decision. See *Nichols v. State*, 281 Ga. 483, 486 (640 SE2d 40) (2007); *Emmanuel v. State*, 300 Ga. App. 378, 382 (5) (685 SE2d 361) (2009) (Emmanuel's attorney "reasonably chose silence [after prosecutor's 'future dangerousness' argument], and we will not use hindsight to second-guess that decision on appeal.") (punctuation omitted).

In addition, the alleged "deficient performance does not constitute ineffective assistance of counsel since appellant did not establish that the failure to object was so prejudicial to his defense that, but for the deficiency, there was a reasonable probability that the outcome of the trial would have been different." (Punctuation omitted.) *Fulton v. State*, 278 Ga. 58, 65 (8) (597 SE2d 396) (2004). In this case, both the victim and her friend positively identified Sewell. The victim was alone in the car with Sewell for an hour to an hour and a half and she testified that she had no doubt that he was the man who attacked and raped her.

2. Sewell also contends that the trial court erred in refusing to strike one of the jurors for cause. When the prosecutor asked juror number 12 if he thought he would "be a good juror in this case," the juror replied that he did not think so, that he had "kind of already formed opinions," because he had a daughter and a wife. The juror gave several contradictory answers to further questions, but when the trial court asked him simply whether he could keep an open mind, withhold making a decision until all the evidence was in, and be fair and impartial, the juror replied, "yes, I could." Defense counsel did not move to strike the juror for cause.

The disqualification of a prospective juror can be waived, either expressly or impliedly. *Kirkland v. State*, 274 Ga. 778, 780, n. 2 (560 SE2d 6) (2002); *Edmonds v. State*, 275 Ga. 450 (569 SE2d 530) (2002); *Miller v. State*, 233 Ga. App. 814, 815 (1) (506 SE2d 136) (1998). Here, defense counsel, after extensive questioning, failed to challenge the juror for cause and therefore this error is not preserved for appellate review. *Passmore v. State*, 274 Ga. 200, 202 (552 SE2d 816) (2001).

3. In his last enumeration, Sewell argues that the State failed to establish venue on the charge of aggravated assault. Sewell claims that there is no evidence that the victim was shot in Fulton County.

"Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt." (Citations and punctuation omitted.) *Bell v. State*, 284 Ga. 790, 792 (1) (671 SE2d 815) (2009). The State may use both direct and circumstantial evidence to prove venue. Id. at 793.

Sewell claims that venue was not proved in Fulton County because the evidence was that the victim drove for an undetermined amount of time from the place where she was sexually assaulted to the place where she was shot, and then drove for a further period of time to the place where she jumped out of the car.

The transcript shows that the victim testified that she drove from Auburn Avenue to what she thought was Peachtree Street where the defendant shot her. She then drove "not too long" until she saw Underground Atlanta and jumped out of the car close to the Five Points MARTA station.

OCGA § 17-2-2 (e), dealing with crimes committed while in transit, provides:

> If a crime is committed upon any railroad car, vehicle, watercraft, or aircraft traveling within this state and it cannot readily be determined in which county the crime was committed, the crime shall be considered as having been committed in any county in which the crime could have been committed through which the railroad car, vehicle, watercraft, or aircraft has traveled.

OCGA § 17-2-2 (h) provides: "If in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed."

The State established that Auburn Avenue was in Fulton County. Further, there is no dispute that Underground Atlanta and the Five Points MARTA station are also in Fulton County. Although the victim "did not know the exact location of the shooting, the logical import of [her] testimony is that the crime scene itself was in Fulton County." *Turner v. State*, 293 Ga. App. 869, 870 (1) (668 SE2d 268) (2008). "As [Sewell] has offered no evidence to the contrary, we conclude that the State met its burden of proving beyond a reasonable doubt that venue of the crime charged is properly in Fulton County." Id.

*Judgment affirmed. Miller, C. J., and Barnes, J., concur.*

DECIDED JANUARY 14, 2010 —
RECONSIDERATION DENIED JANUARY 28, 2010 —

*Steven E. Phillips*, for appellant.
*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.