**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 26, 2013**

# In the Court of Appeals of Georgia

A13A1279. CLEMENT v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Victor Lamar Clement of misdemeanor theft by taking and criminal damage to property in the second degree, and the trial court denied his motion for new trial. On appeal, Clement contends that there was insufficient evidence to convict him of criminal damage to property in the second degree because the State failed to prove that the damage exceeded $500, an essential element of the indicted crime. We are constrained to agree with Clement and therefore vacate his conviction for criminal damage to property in the second degree. However, because the evidence was sufficient to support a conviction of the lesser included offense of criminal trespass to property, we remand the case with direction that the trial court enter a conviction and sentence for that lesser offense.

Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to support the verdict. See *Bryan v. State*, 271 Ga. App. 60 (1) (608 SE2d 648) (2004). So viewed, the evidence showed that shortly after midnight on November 17, 2011, one of Clement's neighbors was on his way to a convenience store when he drove over a strand of telephone wire lying across the road. The neighbor saw Clement in his black Mustang by the side of the road near the wire, and he immediately called 911 to report the suspicious activity. A few minutes later, the neighbor returned home from the store and noticed that the Mustang was now parked near Clement's mobile home, which was approximately a quarter of a mile from where the telephone wire was lying in the road. The neighbor again called 911 and reported the location of the Mustang.

The police responded to the 911 calls and apprehended Clement as he was walking down the center of the road, heading away from his mobile home and back toward the downed telephone wire. In addition to the wire on the road, officers found wire along the side of the road and in a ditch. The wire had been cut from a telephone line running across the road to a telephone post in a pasture.

Based on the neighbor's second 911 call, officers also responded to the property where Clement's mobile home was located and where his Mustang was

2

parked. The officers obtained consent to search the property and the Mustang. While walking around the property, officers found approximately 30 feet of cut telephone wire rolled up in a 55-gallon "burn barrel." The officers, who noted that the ground near where the telephone line had been cut was wet with dew, also found a pair of freshly muddy boots in Clement's Mustang.

Clement was indicted and tried on charges of felony theft by taking and criminal damage to property in the second degree. With regard to the latter charge, the indictment alleged that Clement intentionally damaged the property of AT&T by cutting and removing utility and telephone line cable. At the ensuing jury trial, Clement's neighbor and the responding officers testified to the events previously discussed. The State also called as witnesses two AT&T employees, a digital technician and a network manager for construction and engineering.

The AT&T digital technician testified that the telephone wire found in the burn barrel was from the same strand of wire that had been cut from the line running across the road into the pasture and that the wire belonged to AT&T. He further testified that the cut wire was composed of strands of fiber optic cable and copper cable, but that both types of cable appear the same from the outside. However, unlike fiber optic cable, copper cable can be sold for recycling once the insulation is burned off.

The AT&T network manager testified that a total of 200 feet of fiber optic cable and 50 feet of copper cable had been cut from the telephone line running across the road into the pasture. AT&T technicians had to replace the cut telephone line and repair the damaged ends of the existing line to return telecommunications services to its customers. The replacement and repair work required two AT&T crews, "a placing [crew] and a splicing crew," that together spent eight hours on the job. The network manager, whose "role in this particular case [was] to calculate the financial end of repairing the damage," testified that AT&T had incurred a total of $384 in costs for replacement materials and $1,929 in labor expenses.

With respect to the $1,929 in labor expenses, the network manager testified that he used a "loaded labor rate" to calculate the expense associated with each of the AT&T technicians who performed the repairs to the telephone line, apparently by multiplying the hours worked by each technician times the loaded labor rate for that technician. The manager explained that he did not calculate the loaded labor rate itself for each technician; rather, the loaded labor rate was set out in a chart created and provided to him by the AT&T asset protection department, and he simply applied the rates laid out in the chart to arrive at the labor expenses associated with each AT&T technician involved in the repair work. The loaded labor rate chart developed by the

4

asset protection department and relied upon by the manager to calculate the labor expenses was not introduced into evidence at trial, and no one from the asset protection department was called as a witness.

When asked what was included in the loaded labor rate, the manager indicated that the extent of his knowledge was limited because he simply got the number from the asset protection department. The manager explained, "It's all inclusive of everything that the employee has. The time, the trucks, the fuel, the tools. I'm sure there are a number of things. That is what I'm aware of insofar as the loaded labor rate goes." When later asked if the loaded labor rate for a technician included "his truck, his tools, his insurance on his vehicle and other items," the manager answered in the affirmative.

Upon the close of the State's case-in-chief, the trial court reduced the felony theft by taking count to a misdemeanor after the State agreed that there was insufficient evidence to support a felony charge. Clement also moved for a directed verdict on the count for criminal damage to property in the second degree, contending that the State had failed to prove through competent evidence that the damage exceeded $500, an essential element of the crime. Clement argued that the only competent evidence of damage was the network manager's testimony that AT&T

5

incurred $384 in costs for replacement materials. As to the network manager's testimony regarding his calculation of $1,929 in labor expenses, Clement argued that the testimony was hearsay and lacked probative value because the figure came from a chart created by a third party that was never introduced into evidence by the State. Clement also argued that the $1,929 figure included expenses that could not considered when determining the value of the damaged property. The trial court denied Clement's motion for a directed verdict, but ultimately charged the jury on the lesser included offense of criminal trespass to property.

After hearing all of the evidence, the jury found Clement guilty of misdemeanor theft by taking and criminal damage to property in the second degree. Clement filed a motion for new trial, which the trial court denied. This appeal followed in which Clement challenges the sufficiency of the evidence for his criminal damage to property conviction.

> When evaluating the sufficiency of the evidence,
>
> we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citations and punctuation omitted.) *Sidner v. State*, 304 Ga. App. 373, 374 (696 SE2d 398) (2010). Moreover, in determining whether the evidence was sufficient to support the verdict, we cannot consider hearsay testimony, which is wholly without probative value even if introduced without objection. See *Feagin v. State*, 317 Ga. App. 543, 548 (3) (731 SE2d 778) (2012); *Jackson v. State*, 306 Ga. App. 33, 36 (1) (b) (701 SE2d 481) (2010).[1]

To sustain a conviction for criminal damage to property in the second degree, the State must present competent evidence showing that the defendant intentionally caused in excess of $500 in damage to the property of another person without his or her consent. See OCGA § 16-7-23 (a) (1); *In the Interest of A.F.*, 236 Ga. App. 60 (1) (510 SE2d 910) (1999). "One proper method for proving the value of the damage is evidence of the cost to repair the property." *Polite v. State*, 273 Ga. App. 235, 237 (2) (614 SE2d 849) (2005).

---

[1] In 2011, the Georgia General Assembly repealed the existing Evidence Code and replaced it with a new Evidence Code, which became effective on January 1, 2013 and applies "to any motion made or hearing or trial commenced on or after such date." Ga. Laws 2011, Act 52, § 101. Because Clement's trial occurred in August 2012, the new Evidence Code does not apply to the hearsay issues raised in the present case.

Here, as part of the State's effort to show the cost of the repairs to the telephone line, the network manager opined that AT&T had incurred $1,929 in labor expenses in carrying out those repairs. Significantly, however, if a witness serves as a mere conduit for someone else's opinion, the witness's testimony constitutes inadmissible hearsay. See *Nash v. Compass Bank*, 296 Ga. App. 874, 876 (a) (676 SE2d 28) (2009); *Cantrell v. Northeast Ga. Med. Center*, 235 Ga. App. 365, 379-370 (4) (508 SE2d 716) (1998). A witness acts as a mere conduit and does not provide "an independent expression of opinion" if his or her testimony is "derived purely from a mechanical application of a formula" found in a document prepared by another. See *Dept. of Transp. v. Brand*, 149 Ga. App. 547, 547-548 (1) (254 SE2d 873) (1979), overruled in part on other grounds by *Metropolitan Atlanta Rapid Transit Auth. v. Dendy*, 250 Ga. 538, 541-542 (1) (a) (299 SE2d 876) (1983). See also *Dept. of Transp. v. Fitzpatrick*, 184 Ga. App. 249, 250 (2) (361 SE2d 241) (1987) (testimony of witness "who, in effect, merely testified from . . . documents rather than from personal knowledge" was inadmissible hearsay).

Applying these principles to the case-at-hand, we conclude that the network manager's opinion testimony regarding the $1,929 in labor expenses incurred by AT&T constituted inadmissible hearsay and was wholly without probative value. The

8

record reflects that the manager did not have personal knowledge of the labor expenses that were incurred, but rather calculated the expenses by mechanically applying the "loaded labor rate" contained in a chart prepared by others that was not introduced into evidence. Under these circumstances, the manager was merely a conduit for the opinion of others, namely the AT&T assets protection department, which created the chart used by AT&T for calculating labor expenses associated with its technicians performing repair work. Consequently, the manager's testimony regarding the $1,929 in labor expenses was not competent evidence and could not be considered in determining the costs of the repair to the telephone line.

Furthermore, even if the network manager's testimony regarding AT&T's labor expenses served as competent evidence, it nevertheless could not be considered in calculating the damage to the property under binding precedent of this Court. In *Waldrop v. State*, 231 Ga. App. 164, 164-166 (498 SE2d 337) (1998), a case addressing whether there was sufficient evidence to prove criminal damage to property in the second degree, we held that the expenses incurred by the owner of the damaged property *for the owner's labor in dealing with the damage* "cannot be used as a substitute for the value of the damage to the property" and thus cannot be considered in determining whether the damage exceeds $500. We reasoned that

9

including the owner's labor in the damage calculus would constitute an improper "expansion of the meaning of the statute" because "the crime in its essence is 'criminal damage to property,' not total expenses of the owner in connection with the property damage." (Citation omitted.) Based on our *Waldrop* decision, the expenses incurred by AT&T for its own labor in dealing with the damage to the telephone line could not be considered in determining whether the damage exceeded $500.

For these combined reasons, we conclude that the only probative evidence of damage to the property presented by the State was the network manager's testimony that AT&T had incurred $384 in costs for replacement materials. It follows that the State failed to establish that the damage exceeded $500, an essential element of the crime of criminal damage to property in the second degree, and that Clement's conviction on that count must be vacated.

Nevertheless, the evidence is sufficient to support a conviction of the lesser included offense of criminal trespass to property under OCGA § 16-7-21 (a) "because there is clear evidence that [Clement] intentionally damaged the property of another without consent of that other person and the damage to the property was $500 or less." *In the Interest of J. T.*, 285 Ga. App. 465, 466 (2) (646 SE2d 523) (2007). Accordingly, we remand this case with direction that the trial court enter a conviction

and sentence for criminal damage to property. See id.; *Waters v. State*, 252 Ga. App. 194, 197 (4) (555 SE2d 859) (2001).

*Judgment affirmed in part and vacated in part, and case remanded with direction. Miller, J., concurs. Ray, J., concurs in judgment only.*