**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 2, 2014**

# In the Court of Appeals of Georgia

A14A1459. THE STATE v. ROBERTSON.

ANDREWS, Presiding Judge.

Following a jury trial, David Robertson was convicted of two counts of rape and two counts of aggravated sodomy. Robertson filed a motion for new trial, which the trial court granted, finding that the State failed to prove venue in Fulton County beyond a reasonable doubt. The State now appeals, arguing that it presented sufficient evidence as to venue.[1] For the reasons that follow, we affirm.

We first address the standard of review. OCGA § 5-5-50 states: "The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows

---

[1] The trial court also concluded that the State failed to prove the necessary elements of one of the aggravated sodomy counts, Count IV, which alleged that Robertson "did unlawfully and forcibly perform a sexual act involving accused's male sex organ and the anus of [the victim] against the will of the said [victim]." That portion of the trial court's order is not at issue in this appeal.

that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." While the statute may provide the standard of review in both civil and criminal cases, it "is not applicable in all situations where a trial court has entered a first grant of a motion for new trial." *O'Neal v. State*, 285 Ga. 361, 362-363 (677 SE2d 90) (2009). For example, we review de novo a trial court's first grant of a new trial on a special ground involving a question of law. Id. at 363; see also *State v. James*, 292 Ga. 440, 441 (1) (738 SE2d 601) (2013).

Robertson's motion for new trial, as amended, asserted the general grounds, see OCGA §§ 5-5-20 and 5-5-21, discussed the scope of a trial court's discretion to grant a new trial under those statutes, and argued that the verdict was contrary to the law and evidence because the State failed to prove venue beyond a reasonable doubt. OCGA §§ 5-5-20 and 5-5-21 "afford the trial court broad discretion to sit as a thirteenth juror and weigh the evidence on a motion for new trial alleging [the] general grounds." (Citation and punctuation omitted.) *Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013). At the hearing on the motion for new trial, however, Robertson's counsel, rather than discussing the trial court's discretion to grant a new trial on the general grounds, argued that the evidence at trial was legally insufficient

2

to establish venue in Fulton County. The trial court's order on the motion for new trial contains no indication that it exercised any discretion. Rather, the trial court concluded as a matter of law that the circumstantial evidence upon which the State relied to prove venue was legally insufficient. The trial court thus granted a new trial on the general grounds, but it did so based on a purely legal determination. See *Jones v. State*, 272 Ga. 900, 901-902 (2) (537 SE2d 80) (2000) ("[T]he State's failure to prove venue beyond a reasonable doubt renders the verdict contrary to law [and] without a sufficient evidentiary basis.") (footnote and punctuation omitted). Under these circumstances, we conclude that, consistent with our general practice in reviewing questions of law, a de novo standard of review should be applied. See, e.g., *Bell v. State*, 323 Ga. App. 751 (748 SE2d 114) (2013).

The evidence at trial showed that on April 20, 2005, Robertson drove a coworker home after work to 222 Cole Street, Marietta in Cobb County. When Robertson and his coworker arrived, some girls were sitting on the front porch, including the 16-year-old victim, who lived there, and the victim's sister. Later in the evening, the victim's sister asked Robertson to drive her to her apartment at 740 Mozley Drive, Smyrna in Cobb County. Robertson drove the victim's sister and her sister's boyfriend to that address, and the victim rode with them.

The victim testified that after dropping off her sister and her sister's boyfriend, Robertson told her that he wanted to take her to "see the lights of Atlanta." She stated that she could not remember whether they drove in the direction of Atlanta or how long they were in the car but testified that it was "for a while." They stopped when they "got to the park." The victim recalled that they "got to a building and ended up parking." The victim testified that she ended up lying on some sheets and clothes Robertson laid on the ground and that Robertson raped her. The victim testified that they got back in the car and that she thought they went back to Marietta. They stopped on the way, and the victim did not know where they were. The victim stated that they got out of the car and that Robertson made her bend over the hood and stuck his penis in her vagina. He also made her put his penis in her mouth. The victim stated that she thought Robertson managed to put his penis in her vagina again after they got back in the car. Then Robertson took her home. The victim disclosed what had happened to one of the adults in her Cole Street home, who took the victim to the hospital. The victim admitted on cross-examination that she was not sure that she was in Piedmont Park. When asked, "isn't it true that you simply told one of the district attorneys or a police officer that you were in a park and that it was the district

4

attorney or the police officer that suggested that it was Piedmont Park," the victim replied, "yes."

A City of Marietta police officer who interviewed the victim at the hospital testified that she was able to determine where the crime occurred because the victim was describing landmarks where she and Robertson were driving, such as Turner Field. The officer testified that the victim told her that Robertson pulled into a park not far from Turner Field. According to the officer, the victim also said something about the park being under construction and having big dirt piles. The officer testified that she called Fulton County to find out if Piedmont Park was in "their jurisdiction" and was informed that it was and that Fulton County would send an officer to the hospital. She testified on cross-examination that when she called Fulton County, she was told that there were big dirt piles close to Piedmont Park, but she also stated: "I have not seen the park still to this day, so I can't tell you." The officer clarified that one reason she called Fulton County was that she believed the crimes occurred in Atlanta. She also admitted that the victim never told her that she had been in Piedmont Park.

A detective with the City of Atlanta Police Department who investigated the case testified that he received a call from the Marietta Police Department on April 21,

2005 and learned that the victim was at a hospital in Marietta and was reporting that she had been sexually assaulted in Atlanta. The detective met with the victim that day, and she told him that she had traveled with Robertson from Cobb County, they got on I-285, and he asked her if she wanted to go to Atlanta to see the city lights. He further testified that the victim had disclosed to the Marietta police officer that the sexual assault happened in Piedmont Park. When the prosecutor asked him to clarify what he learned from the victim regarding the location of the crime, the detective responded that the victim and the Marietta police officer both told him that the sexual assault happened "inside the city at Piedmont Park." The prosecutor then showed the detective a map, and the detective testified that it showed a route from the victim's sister's apartment in Cobb County "to Piedmont Park inside the City of Atlanta." The map was admitted into evidence for demonstrative purposes and published to the jury. The detective testified that the map delineated the border between Fulton County and Cobb County, the area in Cobb County appeared in darker shading, and Piedmont Park was marked with a star. The map depicts Piedmont Park as located in Fulton County.

An investigator for the Atlanta Judicial Circuit, Public Defender's Office testified during the defense case that she had worked on Robertson's case and had

6

interviewed the victim in April 2006. She testified that the victim told her that "we were in Atlanta" but also stated that Robertson took her to a park and that she did not know where she was. She also testified that the victim told her that part of the events occurred in Atlanta and part in Marietta. A public defender representing Robertson also participated in the interview and testified that the victim stated that she was unsure where she was and that the "second event" occurred in Marietta. Robertson testified that he had consensual sex with the victim at two locations on the night in question and that they never entered Atlanta or crossed the Chattahoochee River, which forms the boundary between Fulton County and Cobb County. He also stated that he is familiar with "the outskirts of Atlanta that cross over into Cobb . . . but not coming from Cobb crossing over to Atlanta, Fulton County."

The State argued at trial and the trial court agreed that the jury charge should include an instruction based on OCGA § 17-2-2 (h), which states: "If in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." The State argued during closing argument that the jury was authorized to find venue in Fulton County under the terms of this statute. But in concluding that the State failed to prove venue, the trial court

did not consider or address OCGA § 17-2-2 (h). Even under this Code section, however, the State fell short of proving venue because it did not establish beyond a reasonable doubt that Robertson and the victim entered Fulton County. The evidence on this issue was circumstantial. While venue may be proved with circumstantial evidence, see *Lanham v. State*, 291 Ga. 625, 626 (2) (732 SE2d 72) (2012), the evidence here was insufficient to exclude every reasonable hypothesis that Robertson and the victim never entered Fulton County. See OCGA § 24-14-6; former OCGA § 24-4-6.

Testimony that Robertson intended to or did drive the victim to Atlanta does not establish that Robertson drove the victim into Fulton County because of the dearth of evidence as to the county or counties in which Atlanta is located. The Marietta officer testified that one reason she called Fulton County was that she believed the crimes occurred in Atlanta, and her testimony was evidence that Atlanta lies to some extent in Fulton County. The Atlanta police detective testified that Piedmont Park is in Atlanta and in Fulton County, which likewise indicates an overlap between the city and county. Robertson testified at one point that he is familiar with "the outskirts of Atlanta that cross over into Cobb . . . but not coming from Cobb crossing over to Atlanta, Fulton County." Even if it may be inferred from

8

his testimony that Fulton County and Atlanta share a common boundary with Cobb County, the record is silent regarding the extent of the confluence. Significantly, while there was evidence that some part of Atlanta is in Fulton County, the State did not show that if Robertson drove into Atlanta, he necessarily also crossed the border between Fulton County and Cobb County.

Nor did the Atlanta detective's testimony concerning the location of Piedmont Park on a map showing the border between the two counties aid the State in proving that Robertson and the victim entered Fulton County. While such testimony was sufficient to allow the jury to conclude that Piedmont Park is located in Fulton County, see *Smith v. State*, 295 Ga. 283, 288 (2) (759 SE2d 520) (2014), the State was unable to prove that Robertson and the victim went to Piedmont Park. Although the Atlanta detective testified that the Marietta officer and the victim told him that the crime occurred in Piedmont Park, the victim admitted that she was not sure that she was in Piedmont Park on the night in question and that a police officer or district attorney had suggested that location to her. Even crediting the Atlanta detective's testimony that the victim identified Piedmont Park as the location of one of the crimes, the record does not support the conclusion that she did so based on her own personal knowledge. To the extent that the Marietta officer told the Atlanta detective

9

that Robertson and the victim had been in Piedmont Park, her testimony establishes that she reached this conclusion because the victim mentioned driving by landmarks like Turner Field. The Marietta officer admitted that the victim did not tell her that she had been in Piedmont Park.

The Marietta officer testified that after the victim mentioned Turner Field and a park with big dirt piles, she contacted Fulton County to determine if Piedmont Park was in its jurisdiction. The Marietta officer did not discuss the location of Turner Field relative to Piedmont Park, mention whether there are other parks in the vicinity of Turner Field, or explain how or if she excluded the possibility that Robertson might have stopped at another park. The Marietta officer also stated that Fulton County advised her that there were dirt piles at Piedmont Park, but even assuming this hearsay carried probative value, see *Clement v. State*, 324 Ga. App. 39, 42 (749 SE2d 41) (2013)[2], she did not explain how or if she determined that other parks in the area did not have dirt piles. She also admitted that she has never seen Piedmont Park. We cannot conclude that the circumstances upon which the Marietta officer relied in

[2] Georgia's new Evidence Code, which became effective on January 1, 2013, applies "to any motion made or hearing or trial commenced on or after such date." Ga. L. 2011, p. 99, § 10. Robertson's trial took place in May 2009, and our analysis of evidentiary issues at trial is therefore governed by pre-existing law.

identifying Piedmont Park as an actual or possible crime scene were sufficient to exclude other reasonable possibilities or that her opinion that one of the crimes occurred there carries any more weight than the circumstantial evidence upon which it is based. See *Clay v. State*, 193 Ga. App. 377, 378 (2) (387 SE2d 644) (1989) (reversing DUI conviction and concluding that arresting officer's observations of appellant did not provide evidentiary foundation for his opinion that appellant was less safe driver).

Since the State failed to present circumstantial evidence supporting a finding that Robertson and the victim entered Fulton County, the jury had no basis to apply OCGA § 17-2-2 (h). See *Melton v. State*, 282 Ga. App. 685 (639 SE2d 411) (2006) (State failed to prove that residence where appellant committed sexual crimes against victim was in county and thus presented no evidence supporting venue in county under OCGA § 17-2-2 (h) as to subsequent crime that occurred when appellant took victim for motorcycle ride to unknown location). Compare *Taylor v. State*, – Ga. App. – (759 SE2d 892, 894-895) (1) (2014) (evidence was sufficient as to venue for aggravated sodomy; victim was abducted in county, driven to wooded area where crime occurred, and then rescued in county); *Sewell v. State*, 302 Ga. App. 151, 155 (3) (690 SE2d 634) (2010) (venue as to aggravated assault that occurred in

11

appellant's car sufficiently established by evidence that appellant shot victim as she drove between two locations in county). The trial court did not err in granting a new trial based on the State's failure to prove venue beyond a reasonable doubt.

*Judgment affirmed. McFadden, J., concurs. Ray, J., concurs in judgment only.*