**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 2, 2022**

# In the Court of Appeals of Georgia

A21A1246. PAVLOV v. THE STATE.

PINSON, Judge.

After a jury trial, Narcis Pavlov was convicted of three counts of aggravated child molestation, three counts of child molestation, and one count of false imprisonment. He now appeals, challenging the sufficiency of the evidence as to one child molestation count and as to venue for incidents that took place at a gas station; the trial court's failure to merge the three child molestation convictions and the three aggravated child molestation convictions into single units for sentencing; and the trial court's amendment of its written sentencing order.

We affirm the convictions and sentence. With respect to his sufficiency arguments, a rational trier of fact could conclude beyond a reasonable doubt that Pavlov's initial act of kissing M. M.'s neck while sleeping in her bed was "immoral

or indecent" and intended intent to arouse his sexual desire, and that Pavlov stopped at a gas station in Fulton County when driving M. M. from her home located in Fulton County from a movie theater located in Fulton County. As for the merger arguments, the three child molestation counts were properly treated as separate units of prosecution because the acts in question occurred on different days within a period of more than a year, not in a "single uninterrupted course of conduct." And the three aggravated child molestation counts were properly kept separate because each was a distinct act of sodomy. Finally, the court properly amended its original written sentencing order to conform to its oral ruling as well as statutory guidelines regarding split sentences.

## Background

When M. M. was between 9 and 10 years old, she lived in a house on Pony Tail Road with her mother, step-father, and other extended family, including Pavlov, her step-father's father. M. M. testified that while Pavlov lived in their home, he occasionally slept in her room on a mattress on the floor when she was "scared."

M. M. described that Pavlov then began sleeping in her bed and, over the course of several nights, he sexually abused her. Pavlov slept in her bed the first night and kissed her on the neck while M. M. remained still because she was scared. The

2

next night, he fondled her breasts and penetrated her vagina with his fingers. M. M. testified that she then went to the bathroom and when she came back to bed, Pavlov pinned her down with his hands and performed oral sex on her. M. M. testified that on a third night, Pavlov again penetrated her vagina with his fingers, made her perform oral sex on him, and placed his penis on her vagina and bottom.

M. M. described another occasion where Pavlov took her to a movie theater near her house. M. M. fell asleep on the ride home, and awoke to find them parked at a gas station parking lot where Pavlov kissed her and felt her breasts under her shirt while she pretended to remain asleep.

M. M. then disclosed the abuse to her mother and step-father. A forensic interview was conducted with M. M., which was introduced to the jury. A therapist testified that M. M. disclosed that she had been sexually abused by Pavlov in her bedroom and once in a car coming back from a movie.

The jury convicted Pavlov on all but two charges: three counts of aggravated child molestation (Counts 1-3), one count of aggravated sexual battery (Count 4), three counts of child molestation (Counts 6, 8, and 9) and one count of false

imprisonment (Count 10).[1] . Pavlov moved for a new trial, and the trial court vacated his conviction on the count of aggravated sexual battery but otherwise denied the motion. Pavlov now appeals.[2]

## Discussion

1. Pavlov contends that the evidence was insufficient for a conviction in two respects. We review the sufficiency of the evidence by determining whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). In doing so, we do not "reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Harper v. State*, 298 Ga. 158, 158 (780 SE2d 308) (2015) (citation and punctuation omitted).

---

[1] Pavlov was acquitted of one count of child molestation and one count aggravated sexual battery (Counts 5 and 7).

[2] This appeal comes to us on interlocutory review. This is because a criminal case remains pending below when one or more counts of a multi-count indictment have not been resolved, and so review of the resolved counts can be had only by obtaining a certificate of immediate review and filing an interlocutory application. *Seals v. State*, 311 Ga. 739, 741–47 (2)-(3) (860 SE2d 419) (2021); see OCGA § 5-6-34 (b).

4

(a) Pavlov first contends that the evidence was insufficient to support his conviction for child molestation as alleged in Count 6. Count 6 alleged that Pavlov committed child molestation by placing his mouth on M. M.'s neck with the intent to arouse and satisfy his own sexual desires. Pavlov does not claim that the evidence was insufficient to show that the act occurred, but rather that the evidence was insufficient to show that the act was immoral or indecent or intended to arouse his sexual desires, as required by the child molestation statute, OCGA § 16-6-4 (a). We disagree.

The child molestation statute prohibits any "immoral or indecent" act done to or in the presence of a child under the age of 16 with the intent to "arouse or satisfy the sexual desires or either the child or the person." OCGA § 16-6-4 (a) (1). The determination whether a particular act is "immoral or indecent" is a jury question that "may be determined in conjunction with the intent that drives the act." *Slack v. State*, 265 Ga. App. 306, 307 (1) (593 SE2d 664) (2004) (footnote omitted). Accord *Cornelius v. State*, 213 Ga. App. 766, 768 (1) (445 SE2d 800) (1994) (in child molestation cases, the jury must determine whether an act was immoral or indecent and if it was committed with the requisite criminal intent). Further, "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8.

5

Here, the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that acts alleged in Count 6 were "immoral or indecent" and intended to arouse Pavlov's sexual desires. M. M. testified that Pavlov kissed her neck while sleeping in her bed, and it made her uncomfortable and scared. It also began a pattern of behavior in which, on later nights, Pavlov engaged in further acts of child molestation, including fondling her breasts and vagina and performing oral sex on her. This evidence was enough to allow a rational trier of fact to conclude that Pavlov's initial act of kissing M. M.'s neck while sleeping in her bed was "immoral or indecent" and intended intent to arouse his sexual desires. See *Jackson*, 443 U. S. at 319 (III) (B). Accord *Gonzalez v. State*, 359 Ga. App. 147, 149 (1) (a) (857 SE2d 88) (2021) (evidence was sufficient to support jury's finding that defendant's touching of victim's buttocks in a swimming pool was an immoral or indecent act performed with the intent to arouse his sexual desires); *Thomas v. State*, 324 Ga. App. 26, 28 (748 SE2d 509) (2013) (evidence sufficient to establish that defendant committed an immoral or indecent act by kissing an eleven-year-old victim on the lips, thus supporting conviction for child molestation).

(b) Pavlov also contends that there was insufficient evidence to establish venue for the crimes alleged to have occurred at the gas station. We disagree.

6

A criminal case must be tried "in the county where the crime was committed." Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. "Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt." *In the Interest of D. D.*, 287 Ga. App. 512, 513 (2) (651 SE2d 817) (2007) (citation and punctuation omitted). As with any other fact, "[t]he State may meet its burden at trial using either direct or circumstantial evidence, and the determination of whether venue has been established is an issue soundly within the province of the jury." *Worthen v. State*, 304 Ga. 862, 865 (3) (a) (823 SE2d 291) (2019) (citation and punctuation omitted). The standard of appellate review to determine whether venue was sufficiently proven is the same as for any other sufficiency review: whether, in the light most favorable to the prosecution, any rational trier of fact could have found venue beyond a reasonable doubt. *Boyd v. State*, 351 Ga. App. 469, 472 (2) (b) (829 SE2d 163) (2019).

Here, the indictment does not specify the location where the crimes took place, and stated only that they occurred in Fulton County. An officer testified that M. M.'s home was in Fulton County. The officer also testified that he believed that the movie theater was also in Fulton County because M. M. described it as being a Regal

7

Cinemas close to her house and the only Regal Cinemas located outside Fulton County would have been a long drive from her house. M. M. testified that she fell asleep on the drive home from the movie theater, and that she awoke to find Pavlov molesting her in a gas station parking lot.

It is clear that M. M. did not know precisely the location of the gas station because she was asleep during the drive from the movie theater. However, OCGA § 17-2-2 (e) provides that "[i]f a crime is committed upon any . . . vehicle . . . traveling within this state and it cannot readily be determined in which county the crime was committed, the crime shall be considered as having been committed in any county in which" it could have been committed through which the vehicle has traveled. Further, OCGA § 17-2-2 (h) provides that "[i]f in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt it might have been committed." See *Hendrix v. State*, 242 Ga. App. 678, 680 (1) (530 SE2d 804) (2000) (sufficient evidence of venue when there was testimony that the defendant was driving in a car "headed back into town" to Savannah and Chatham County when the crime occurred). The jury was authorized to conclude that Pavlov stopped at a gas station in Fulton County when driving M. M. from her home located in Fulton County

8

from a movie theater located in Fulton County. See *Sewell v. State*, 302 Ga. App. 151, 155 (3) (690 SE2d 634) (2010) (venue as to defendant's act of shooting victim was sufficiently proven under OCGA § 17-2-2 (e) and (h) when defendant testified that she drove for an undetermined amount of time from the place where she was sexually assaulted to the place where she was shot).

3. Pavlov contends that the trial court erred by failing to merge his child molestation convictions and his aggravated child molestation convictions together as a unit of prosecution for the purposes of sentencing. We disagree.

(a) *Child Molestation (Counts 6, 8 and 9).* Pavlov contends that the trial court erred by failing to merge his child molestation convictions for sentencing purposes. Pavlov relies on *Scott v. State*, 356 Ga. App. 152 (846 SE2d 241) (2020) to support his assertion that his convictions for child molestation should merge because they arose out of the same "short series of transactions in the same location."[3] In *Scott*, this Court applied "unit of prosecution" analysis to the statute defining child molestation, OCGA § 16-6-4 (a) (1), to determine whether convictions for child molestation, based

---

[3] The indictment describes the child molestation charges as follows: Count 6 (alleging child molestation for placing his mouth on the child's neck), Count 7 (alleging child molestation for placing his mouth on the child's mouth), Count 8 (alleging child molestation for placing his hands on the child's genital area) and Count 9 (alleging child molestation for placing his hands on the child's breasts)

on touching various body parts of the victim "within a relatively short time frame and in a single uninterrupted course of conduct," should merge for sentencing. *Scott*, 356 Ga. App. at 152. This Court concluded that the rule of lenity required that the ambiguity be resolved in favor of the defendant, and thus, the three child molestation counts should have merged because they were based on his touching of three parts of the victim's body during a single uninterrupted incident. Id at 163 (5).

But Pavlov's case is different. His argument is "premised on a fundamental misrepresentation of the evidence," namely, that Pavlov engaged in a single act of child molestation. *Spires v. State*, 357 Ga. App. 440, 449 (5) (850 SE2d 854) (2020). This is not a case in which the sexual acts alleged in the different counts were part of a "single uninterrupted course of conduct." *Scott*, 356 Ga. App. at 152. Rather, the indictment alleged that the various sexual contacts occurred sometime "between the 1st day of January, 2009 and the 31st day of December, 2010," and M. M.'s testimony shows that Pavlov kissed her on the neck as well as fondled her breasts and genitals on several separate nights in her bedroom as well as in the car while parked at the gas station. See *Spires*, 357 Ga. App. at 450 (5) (conviction for child molestation did not merge into conviction for aggravated child molestation because sexual acts alleged in different counts were not part of a single course of conduct occurring over a

10

relatively short time, but rather occurred on a number of different occasions). Because the evidence showed that the acts of molestation alleged in Counts 6, 8 and 9 did not involve a single, uninterrupted course of conduct, the trial court did not err by failing to merge the sentences.

(b) *Aggravated Child Molestation (Counts 1-3)*. Pavlov further contends—again relying on *Scott*—that the trial court erred by failing to merge his aggravated child molestation convictions for sentencing purposes because they arose out of the same "short series of transactions in the same location." The indictment describes the aggravated child molestation charges as follows: Count 1 (alleging aggravated child molestation for placing his penis in M. M.'s mouth), Count 2 (alleging aggravated child molestation for placing his penis on M. M.'s anus) and Count 3 (alleging aggravated child molestation for placing his mouth on M. M.'s vagina)

Pavlov's reliance on *Scott* is again mistaken. *Scott* held that "multiple touches to a victim, during a single uninterrupted course of conduct" could not be charged as separate acts of *child molestation* after construing the statute's ambiguous use of the word "any" in favor of the defendant. *Scott*, 356 Ga. App. at 160, 163. But the statute does not repeat that ambiguous word in describing aggravated child molestation.

11

Instead, that offense is more precisely defined as "an offense of child molestation *which act* physically injures the child or involves *an act* of sodomy." OCGA § 16-6-4 (c) (emphasis supplied). Unlike the word "any"—which, as Scott explained, could denote "a full spectrum of quantities, including: (1) one; (2) one, some, or all regardless of quantity; (3) one or more; (4) great, unmeasured, or unlimited in amount; and (5) all"—the phrases "which act" and "an act" refer unambiguously to a single act that injures the child or, relevant here, a single act of sodomy. *Scott*, 356 Ga. App. at 158 (5). See e. g. *Nik-Chavez v. Garland*, __ U. S. __ (141 S.Ct. 1474, 1481, 209 LE2d 433 ) (2021) (concluding that information to be provided in "*a* notice" must be contained in a single document); *McFadden v. United States*, 576 U. S. 186 (135 S.Ct. 2298, 192 LE2d 260) (2015) ("When used as an indefinite article, 'a' means 'some undermined or unspecified particular[,]'"); *Ramierz v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1362 (III) (11th Cir. 2021) (concluding that—in the phrase work "performed . . . on a farm"— the "use of the indefinite article "a" before the word "farm" means that the phrase refers to a single farm).. Thus, as we held recently, each distinct act of sodomy is a unit of prosecution for aggravated child molestation. See *Fossier v. State*, __ Ga. App. __ (5) (Case No. A21A1735, decided December 29, 2021) (four aggravated child molestation charges

12

did not merge for purposes of sentencing because evidence showed four distinct acts of oral sodomy occurring during the same incident).

Here, the counts of aggravated child molestation involved three distinct acts of sodomy—penile-oral sodomy, penile-anal sodomy, and oral-vaginal contact—across two different nights.[4] The trial court therefore did not err by failing to merge those distinct acts for sentencing. See id.

4. Pavlov finally contends that the trial court erred when it amended the sentence for his aggravated child molestation charges in his absence and outside the term of court in which it was entered. We disagree.

After the jury entered its verdict at trial, the trial court orally announced that Pavlov would receive a sentence of imprisonment for 25 years to serve, with life on probation, for each of his aggravated child molestation convictions (with all sentences running concurrently). But the written sentence that followed was for only 25 years to serve, concurrently, on the aggravated child molestation counts and omitted the reference to life on probation.

---

[4] OCGA § 16-6-2 (a) (1) ("A person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another").

13

More than seven months later, the trial court issued an amended written sentence to conform to its oral sentence. This amended order sentenced Pavlov to a "split sentence of 25 [years] to serve, followed by probation for life" (to run concurrently) on the three aggravated child molestation counts. A week later, the trial court issued a second amended written sentence that sentenced Pavlov on these counts to "life to serve 25 years, with the balance of his life on probation" (to run concurrently).

The trial court properly amended its original sentencing order. That order was void because it failed to comply with the split sentence requirement of OCGA § 16-6-4 (d) (1). See OCGA § 16-6-4 (d) (1) (a person convicted of aggravated child molestation "shall be punished by imprisonment for life or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life"); *Collins v. State*, 358 Ga. App. 289, 290–91 (1) (855 SE2d 40) (2021) (aggravated child molestation sentence "that does not comply with the split sentence requirement [of OCGA § 16-6-4 (d) (1)] is void") (punctuation and footnote omitted). And "a trial court has jurisdiction to resentence defendants at any time when their sentences are void." *Jordan v. State*, 253 Ga. App. 510, 511 (1) (559 SE2d 528) (2002).

14

We also reject Pavlov's argument that the trial court erred by issuing these amended written sentences without holding a new sentencing hearing in his presence. The amended sentencing orders were issued to conform to the sentence the trial court orally announced at trial. Further, because the trial court was without discretion to award a lesser sentence, see OCGA § 16-6-4 (d) (1), the amended orders were merely ministerial, and therefore their issuance did not require Pavlov's presence. See *McGruder v. State*, 307 Ga. App. 379, 380 (3) (705 SE2d 175) (2010) ("[W]here the defendant's sentence is mandatory or fixed in such a way that, at resentencing, the trial court is without discretion, the resulting resentencing proceeding is purely ministerial, and it is unnecessary for the defendant to be present at the sentencing hearing or be represented by counsel") (citation omitted); *Hammond v. State*, 277 Ga. App. 148, 149 (625 SE2d 503) (2005) (defendant's presence not required when resentencing outside of defendant's presence based upon proper merger was ministerial); *Shaheed v. State*, 274 Ga. 716, 717 (559 SE2d 466) (2002) ("[I]f resentencing only involves a ministerial function, a defendant need not be present").

Pavlov also appears to contend that the second amended sentence imposed a punishment above what was imposed by the first amended sentence. Not so. The trial court's sentencing order merely re-worded the first amended sentence and was the

15

minimum sentence available to be imposed. See *McGruder,* 307 Ga. App. at 380–81 (3).

For the above reasons, the trial court did not err in issuing the amended sentencing orders to comply with the statutory requirements of OCGA § 16-6-4 (d) (1).

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur*.